# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
WILLIE E. BOYD,                         )
                                        )
                Plaintiff,              )
                                        )
        v.                              )        Civil Action No. 13-1304 (ABJ)
                                        )
EXECUTIVE OFFICE FOR                    )
UNITED STATES ATTORNEYS, *et al.*,      )
                                        )
                Defendants.             )
_____)

## MEMORANDUM OPINION

Plaintiff Willie E. Boyd brings this *pro se* action against defendants the Executive Office

for United States Attorney ("EOUSA") and the Bureau of Alcohol, Tobacco & Firearms ("ATF")

under the Freedom of Information Act ("FOIA").  All parties have moved for summary judgment.

*See* Defs.' Renewed Mot. for Summ. J. [Dkt. # 20] ("Defs.' Mot."); Mem. in Supp. of Defs.' Mot.

[Dkt. # 20-3] ("Defs.' Mem."); Pl.'s Opp. to Defs.' Mot. & Cross-Mot. for Summ. J. [Dkt. # 29]

("Pl.'s Mot.").  For the reasons that follow, the Court will grant defendants' motion in part and

deny it in part, it will grant plaintiff's motion in part and deny it in part, and it will remand the case

to defendants for further proceedings consistent with this opinion.

## BACKGROUND

Plaintiff is a federal prisoner confined at the Federal Correctional Institution in Greenville, Illinois. *See* Compl. [Dkt. # 1] at 1.[1] In 1998, plaintiff was convicted of multiple criminal offenses, including gun and drug charges, after a bench trial in the Eastern District of Missouri. *See United States v. Boyd*, 180 F.3d 967, 974–75 (8th Cir. 1999). The conviction was affirmed on appeal. *Id.* at 983.

Since 1998, plaintiff has filed numerous *pro se* FOIA actions in this District against the defendants in this case and other government agencies. *See, e.g.*, *Boyd v. Exec. Office for U.S. Atty's*, 741 F. Supp. 2d 150 (D.D.C. 2010); *Boyd v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 496 F. Supp. 2d 167 (D.D.C. 2007); *Boyd v. Criminal Div., U.S. Dep't of Justice*, No. 04-cv-1100 (ESH), 2005 WL 555412, at *1 (D.D.C. March 9, 2005) (FOIA lawsuit against the Criminal Division of the U.S. Department of Justice, the U.S. Probation Office for the Eastern District of Missouri, the U.S. Parole Commission, the U.S. Marshals Service, and EOUSA); *see also Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 384–85, 392 (D.C. Cir. 2007) (describing plaintiff's history of FOIA litigation and affirming *Boyd*, 2005 WL 555412).

Plaintiff has also filed numerous *pro se* petitions in other courts attacking his criminal conviction. *See, e.g.*, *Boyd v. Walton*, No. 13-cv-651-CJP, 2014 WL 128341, at *1 (S.D. Ill. Jan. 14, 2014) (noting that the U.S. District Court for the Eastern District of Missouri no longer accepts filings from Boyd related to his closed criminal case and his closed 28 U.S.C. § 2255 case because of his "history of filing a multitude of motions for reconsideration, rehearing, or the like"; that

---

1    Plaintiff was granted leave to amend his complaint on March 5, 2014. Minute Order (Mar. 5, 2014). Plaintiff's new pleading, however, sets forth only the allegations of Count 3, the new count, and it incorporates Counts 1 and 2 by reference. *See* Pl.'s Mot. to Am. Compl. [Dkt. # 16] at 1–2. For this reason, the Court will cite to the original complaint with respect to Counts 1 and 2, and to the amended complaint with respect to Count 3.

plaintiff had filed "at least six post-conviction petitions in this District"; and that the U.S. Court of Appeals for the Seventh Circuit had issued sanctions against plaintiff "[b]ecause of his repeated raising of the same frivolous claim") (citations and internal quotation marks omitted).

This case involves three more FOIA requests submitted by plaintiff to defendants EOUSA and ATF.

## I.      Plaintiff's March 26, 2013 FOIA Request to EOUSA

On March 26, 2013, plaintiff submitted a FOIA request to EOUSA that sought "any and all documents, records and information in [his] criminal case United States v. Willie E. Boyd, 4:97CR301, in the Eastern District of Missouri."  App. "Count I" to Compl. at ECF 8.[2]  Plaintiff further stated that he sought "information from the criminal case file that would expose the bad-faith nondisclosure of Brady/Giglio/Jencks and Rule 16 materials and information of governmental misconduct with the didcovery [sic] materials in the case."  *Id.*

On April 22, 2013, EOUSA acknowledged plaintiff's FOIA request and advised him that it was searching for responsive records.  *See* Decl. of David Luczynski [Dkt. # 20-5] ("1st Luczynski Decl.") ¶ 5; Ex. B to 1st Luczynski Decl. [Dkt. # 20-6] at 1; Pl.'s Statement of Material Facts in Opp. to Defs.' Mot. [Dkt. # 28] ¶ 4.

On May 3, 2013, plaintiff sent a letter "to inform EOUSA that there had been a request also for documents and information in its files on Bryant Troupe that should be disclosed," as well as "documents and information on Bryant Troupe that appear in the April 15, 1998 discovery

---

2      Plaintiff attached 157 pages of material to the six-page original complaint.  *See* Compl. This additional material is organized into two large appendices, "Count 1" and "Count 2," with multiple sub-appendices nested under each.  The Court will cite to these materials accordingly, and will refer to the page numbers provided by the ECF system for additional clarity.

disclosure letter that had allegedly been hand-delivered to Trial Counsel Carl Epstein by the Government's counsel." Ex. D to 1st Luczynski Decl. [Dkt. # 20-6] at 1.

On February 27, 2014, EOUSA disclosed to plaintiff 201 pages of responsive records in full and 267 pages with redactions. 1st Luczynski Decl. ¶ 8; Pl.'s Mot. at 4. In addition, EOUSA informed plaintiff that it was withholding 139 responsive pages under FOIA Exemptions 3, 5, 6, and 7(C). 1st Luczynski Decl. ¶ 8; Pl.'s Mot. at 4. EOUSA also stated that it had referred an unspecified number of records to other components of the government – ATF, the Internal Revenue Service ("IRS"), the Department of the Treasury ("Treasury"), the Bureau of Prisons ("BOP"), and the U.S. Marshals Service ("USMS") – for further processing. Ex. E to 1st Luczynski Decl. [Dkt. # 20-6] at 2; *see also* 1st Luczynski Decl. ¶ 8. Finally, EOUSA informed plaintiff of his right to appeal its determination, but he did not do so.[3] Luczynski Decl. ¶¶ 8–9; Ex. E to 1st Luczynski Decl. at 2.

## II.    Plaintiff's March 26, 2013 FOIA Request to ATF

On March 26, 2013, plaintiff submitted a FOIA request to ATF, seeking "any and all documents, records and information associated with" his name or identification number, and specifying that the relevant records "are all associated with the [ATF] Case File # 745519-19-0012, from the criminal prosecution of the case United States v. Boyd, 4:97CR301, from the Eastern District of Missouri." App. "Count 2" to Compl. at ECF 79. In addition, plaintiff stated:

---

3       The Court notes that, despite plaintiff's failure to administratively appeal the EOUSA's determination, defendants do not allege that plaintiff's claims are barred on exhaustion grounds. *See Hidalgo v. FBI*, 344 F.3d 1256, 1259–60 (D.C. Cir. 2003) (holding FOIA plaintiff's claims to be barred for failure to exhaust administrative remedies). In addition, the exhaustion requirement is prudential, not jurisdictional, *id.* at 1258, and so the Court is not required to dismiss plaintiff's claims on this basis. Therefore, the Court will consider the merits of plaintiff's claims.

"The requester specifically seek [sic] documents and information in its files of the government's paid informant Bryant Troupe, and his working relation with ATF Agent James Green." *Id.*

On April 22, 2013, ATF acknowledged plaintiff's FOIA request and advised him that it would begin processing his request for information relating to himself. Decl. of Stephanie M. Boucher, Chief, Disclosure Division, ATF [Dkt. # 20-7] ("Boucher Decl.") ¶ 5; Ex. B to Boucher Decl. [Dkt. # 20-8] at 1 (letter from Boucher to plaintiff). The agency informed plaintiff, though, that it would not process the portions of his request that sought information about third parties because, pursuant to the Privacy Act, "[r]ecords pertaining to a third party generally cannot be released without the express authorization and written consent of the third party, proof of death of the third party, or a clear demonstration that the public interest in the disclosure outweighs the personal privacy interest of the third party." Ex. B to Boucher Decl. at 1. The agency stated that because plaintiff had provided no evidence that he had the right to access third-party records, it could not disclose the information he sought. *Id.*

Plaintiff responded to the agency's letter on May 3, 2013, conveying his view that FOIA Exemptions 7(C) and 7(D) did not apply to the information he sought about Bryant Troupe "[b]ecause the Government has waived any privacy interest in nondisclosure by being involved in misconduct with Bryant Troupe, and deliberately concealing discovery materials of misconduct with Troupe." Ex. C to Boucher Decl. [Dkt. # 20-8] at 1. Plaintiff also alleged that "Bryant Troupe had been utilized in a covert operation in the investigation of Willie Boyd." *Id.*

On August 30, 2013, ATF informed plaintiff that it would take no further action on his FOIA request because the records he sought had "already been subject to the full process contemplated by the FOIA (i.e. initial processing, agency appeal and judicial review,[]) and all of [his] arguments ha[d] been fully considered therein." Ex. D to Boucher Decl. [Dkt. # 20-8] at 1.

On February 21, 2014, the ATF received a referral of records from the EOUSA.  Boucher Decl. ¶ 8.  ATF's Disclosure Division determined that all of the referred records had also "been subject to the full process contemplated by the FOIA," and so they were not subject to release.  *Id.* ¶ 9; Ex. F to Boucher Decl. [Dkt. # 20-8] at 1.  On March 14, 2014, ATF informed plaintiff that, for this reason, it would take no further action on his FOIA request and that it considered the matter closed.  Ex. F to Boucher Decl. at 1.

### III.  Plaintiff's December 3, 2013 FOIA Request to EOUSA

On December 3, 2013, plaintiff submitted another FOIA request to EOUSA.  App. to Am. Compl. [Dkt. # 16] at ECF 4–5.  This request sought "any and all document [sic] and information in the files of EOUSA on Bobby Garrett," whom plaintiff described as a "former rogue St. Louis Police Officer . . . who was indicted and convicted in United States v. Bobby Lee Garrett."  *Id.* Plaintiff specified in great detail the information he was looking for with respect to Garrett, which included:

> Any investigations of his wrongdoing or governmental corruption by Garrett.  How many defendants had been released based on the corruption by Bobby Garrett and others.  How many cases Bobby Garrett testified in on behalf of the Government.  Any and all complaints filed against Bobby Garrett about his corruption in the files of the Government.  Requesting information about search warrants found to be invalid based on wrongdoing by Bobby Garrett. The amount of cash money illegally taken by Bobby Garrett from citizens while he was acting as an [sic] St. Louis Police Officer.

*Id.* Plaintiff also sought information about defendants who had been exonerated "doing [sic] to Bobby Garrett being exposed as a corrupt cop," public records on Garrett, a list of properties Garrett had illegally entered, and information about the relationship between Garrett and Bryant Troupe.  *Id.* at ECF 4–5.

"Due to an error or an omission," EOUSA did not timely respond to plaintiff's December 3, 2013 request.  Supp. Decl. of David Luczynski [Dkt. # 20-4] ("2d Luczynski Decl.") ¶ 7.

Plaintiff submitted an administrative appeal on January 24, 2015, Ex. C to 2d Luczynski Decl. [Dkt. # 20-4], which was denied on March 6, 2014, on the grounds that plaintiff had already initiated a lawsuit related to this request.  Ex. E to 2d Luczynski Decl. [Dkt. # 20-4].  In addition, "[t]o make up for" its earlier failure to respond, EOUSA sent plaintiff a response to his December 3, 2013 request on April 21, 2014.  2d Luczynski Decl. ¶ 7; *see also* Ex. F to 2d Luczynski Decl. [Dkt. # 20-4].  The response letter stated that plaintiff's December 3, 2013 request was denied in full because he sought records concerning third parties without any authorization or justification, and so the information was exempt from disclosure under the Privacy Act.  Ex. F to 2d Luczynski Decl. at 1.  In addition, the agency claimed that FOIA Exemptions 6 and 7(C) protected the third-party information from disclosure.  *Id.*

## IV.   Procedural History

Plaintiff filed this action on August 28, 2013.  Compl.  The Court granted plaintiff leave to amend the complaint on March 5, 2014.  Minute Order (Mar. 5, 2014); *see also* Am. Compl.

On March 18, 2014, defendants moved for summary judgment, Defs.' Mot. for Summ. J. [Dkt. # 17], but because the motion did not address Count 3 of plaintiff's amended complaint, the Court afforded defendants an opportunity to file a renewed motion.  Minute Order (Apr. 22, 2014).  Defendants filed the renewed motion on June 23, 2014.  Defs.' Mot.

On October 27, 2014, plaintiff filed a combined memorandum in opposition to defendants' renewed motion for summary judgment and cross-motion for summary judgment.  Pl.'s Mot.  On November 17, 2014, defendants filed a combined reply and cross-opposition.  Reply Mem. & Mem. in Opp. to Pl.'s Mot. [Dkt. # 31] ("Defs.' Reply").  Plaintiff filed a cross-reply on December 10, 2014.  Pl.'s Sur-Reply to Defs.' Opp. [Dkt. # 33] ("Pl.'s Reply").

On February 27, 2015, plaintiff filed a motion to expedite the proceedings in this case, arguing that the government misconduct his pleadings and evidence had established constituted "good cause shown."  Pl.'s Mot. to Expedite [Dkt. # 34] at 5.  The Court notified the parties that it would hold plaintiff's motion to expedite in abeyance until it had resolved the pending motions for summary judgment.  Order (Mar. 26, 2015).

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's action *de novo* and "the burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  "FOIA cases are typically and appropriately decided on motions for summary judgment."  *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).  On a motion for summary judgment, a court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence."  *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  But where a plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations."  *Moore*, 601 F. Supp. 2d at 12.

While the same legal framework applies in every case, where a plaintiff proceeds *pro se*, "the Court must take particular care to construe the plaintiff's filings liberally, for such complaints are held 'to less stringent standards than formal pleadings drafted by lawyers.'"  *Cheeks v. Fort Myer Constr. Co.*, 722 F. Supp. 2d 93, 107 (D.D.C. 2010), quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## ANALYSIS

FOIA requires the release of government records upon request and its purpose is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."). The Supreme Court has instructed that "FOIA exemptions are to be narrowly construed." *Abramson,* 456 U.S. at 630.

To prevail in a FOIA action, an agency must, first, demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "[A]t the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), citing *Oglesby*, 920 F.2d at 68. Second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). "'[W]hen an agency seeks to withhold information, it must provide a relatively detailed justification,'" for the withholding, *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007),

quoting *King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987), through a *Vaughn* Index, an affidavit, or by other means. *Gallant v. NLRB*, 26 F.3d 168, 172–73 (D.C. Cir. 1994).

After asserting and explaining its exemptions, an agency must release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *see also Johnson v. Exec. Office of U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002). "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," although "the agency is not required to provide so much detail that the exempt material would be effectively disclosed." *Johnson*, 310 F.3d at 776, quoting *Mead Data*, 566 F.2d at 261. "A district court has the obligation to consider the segregability issue *sua sponte*, regardless of whether it has been raised by the parties." *Id.*, citing *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

## I.    EOUSA's Response to Plaintiff's FOIA Requests

In response to plaintiff's March 26, 2013 FOIA request, EOUSA released 201 pages of records to plaintiff in full and 267 pages in part, and it withheld 139 pages in full. Luczynski Decl. ¶ 8. EOUSA invoked FOIA Exemptions 3, 5, 6, and 7(C) to justify its withholdings, as well as Privacy Act Exemption (j)(2). *Id.* The agency also categorically withheld "all records pertaining to third party individuals" under Exemptions 6 and 7(C), stating that plaintiff had provided no evidence of authorization to receive the third parties' personal information. *Id.* ¶¶ 24, 27. To explain and support its response, the agency submitted a declaration by David Luczynski, an Attorney Advisor with EOUSA, 1st Luczynski Decl. ¶ 1, and a *Vaughn* Index. Ex. F to 1st Luczynski Decl. [Dkt. # 20-6] ("*Vaughn* Index").

EOUSA also categorically withheld all records responsive to plaintiff's December 3, 2013 FOIA request under FOIA Exemptions 6 and 7(C) and Privacy Act Exemption (j)(2).   2d Luczynski Decl. ¶¶ 8, 11.  The agency again stated that it was withholding "all records pertaining to third party individuals" and that plaintiff had shown no authorization to receive this information. *Id.* ¶ 11.  In support of this withholding, the agency submitted a second declaration by David Luczynski.[4]  *Id.*

### A. EOUSA's search for responsive records was adequate.

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Oglesby*, 920 F.2d at 68; *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  To demonstrate that it has performed an adequate search, an agency must submit a reasonably detailed affidavit describing the search.  *Oglesby*, 920 F.2d at 68 (finding summary judgment improper where agency's affidavit lacked sufficient detail); *see also Defenders of Wildlife v. U.S. Border Patrol (Defenders II)*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009) (same).  A declaration is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched."  *Oglesby*, 920 F.2d at 68; *see also White v. Dep't of Justice*, 840 F. Supp. 2d 83, 89 (D.D.C. 2012) (finding declarations sufficient where they "explain[ed] what system was

---

4    The Court notes that plaintiff advances arguments in his motion for summary judgment and opposition relating to FOIA Exemptions 7(D) and 7(F).  *See* Pl.'s Mot. at 40–43.  Although defendants may have invoked these exemptions to withhold information from plaintiff in other proceedings, they do not rely on Exemptions 7(D) or 7(F) in this case.  The Court will therefore not address plaintiff's arguments with respect to those exemptions.

searched, the terms used, why it was likely to contain responsive documents, and that no other search method would reveal responsive documents"); *Defenders II*, 623 F. Supp. 2d at 92 (finding declaration deficient where it failed to detail the types of files searched, the filing methods, and the search terms used).

"'The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate.'" *Defenders of Wildlife v. U.S. Dep't of Interior (Defenders I)*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004), quoting *Perry v. Block,* 684 F.2d 121, 128 (D.C. Cir. 1982); *see also SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (finding that an adequate search need not "uncover[] every document extant"). "[A]n agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Nation Magazine*, 71 F.3d at 890, citing *Oglesby*, 920 F.2d at 68. Agency affidavits attesting to a reasonable search "are afforded a presumption of good faith," *Defenders I*, 314 F. Supp. 2d at 8, and "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Id.*, quoting *Trans Union LLC v. Fed. Trade Comm'n*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001).

Plaintiff's March 26, 2013 FOIA request to EOUSA sought "any and all documents, records and information in your criminal case United States v. Willie E. Boyd, 4:97CR301, in the Eastern District of Missouri." App. "Count I" to Compl. at ECF 8. In addition, plaintiff's May 3, 2013 letter to EOUSA emphasized that plaintiff's March request encompassed records related Bryant Troupe, as well. Ex. D to 1st Luczynski Decl. at 1. Plaintiff's December 3, 2013 FOIA request to EOUSA sought "any and all document [sic] information in the files of EOUSA on Bobby Garrett." App. to Am. Compl. at ECF 4–5.

As a preliminary matter, the Court notes that EOUSA categorically denied the parts of plaintiff's FOIA requests that sought records related to third-party individuals. *See* Luczynski Decl. ¶ 24; 2d Luczynski Decl. ¶ 11.  Thus, EOUSA did not search for records responsive to those portions of the requests.  As explained below, the Court finds that EOUSA's categorical denials were appropriate in this case, and so its failure to search for records related to third parties does not undermine the overall adequacy of its search.

With respect to the portion of the March 26, 2013 request that sought records related to plaintiff, the Court finds that EOUSA conducted an adequate search for responsive records.  The agency began its search by forwarding the FOIA request to the FOIA contact for the U.S. Attorney's Office for the Eastern District of Missouri.  1st Luczynski Decl. ¶ 10.  The FOIA contact then searched the "LIONS" system, which is "the computer system used by United States Attorneys offices to track cases and to retrieve files pertaining to cases and investigations."  *Id.* This system permits a user to retrieve information using a person's name, an internal U.S. Attorney's Office administrative number, or a case number.  *Id.*  In this case, the FOIA contact searched the LIONS system using plaintiff's name.  *Id.*  In addition to searching this system, the FOIA contact reached out to "the appropriate Assistant United States Attorneys in the Criminal Division" by email "to ascertain whether they had any responsive records."  *Id.*  The agency asserts that "[t]here are no other records systems or locations within the Eastern District of Missouri in which other files pertaining to plaintiff's criminal case, were maintained."  *Id.* ¶ 12.

Plaintiff contends that the agency has not described an adequate search for records because: (1) it has not provided the name of the FOIA contact in the Eastern District of Missouri; (2) it has not provided a sworn declaration and *Vaughn* Index by that FOIA contact; and (3) "David

Luczynski has no personal knowledge of the search for responsive records."[5]  Pl.'s Mot. at 49–50.

None of these objections undermines the adequacy of the search, because the person "in charge of

coordinating" an agency's search can be "the most appropriate person to provide a comprehensive

affidavit."  *SafeCard Servs.*, 926 F.2d at 1201, citing *Meeropol v. Meese*, 790 F.2d 942, 951 (D.C.

Cir. 1986), and *Weisberg v. Dep't of Justice*, 627 F.2d 365 (D.C. Cir. 1980).  Moreover, the

Luczynski declaration provides a reasonably detailed description of the search:  it "explains what

system was searched," *see White*, 840 F. Supp. 2d at 89, it describes the "search terms and type[s]

of search[es] performed," *see Oglesby*, 920 F.2d at 68, and it "aver[s] that all files like to contain

responsive materials . . . were searched."  *See id.*  Therefore, the Court finds that EOUSA has

described a search that "was 'reasonably calculated to uncover all relevant documents'" with

respect to the portion of plaintiff's FOIA request that sought records related to himself.  *See

Valencia-Lucena*, 180 F.3d at 325, quoting *Truitt*, 897 F.2d at 542.

###### B.  *EOUSA's reliance on Exemption 7(C) is justified.*

EOUSA "categorically applied" FOIA Exemptions 6 and 7(C) to withhold all records

responsive to the March 26, 2013 request pertaining to third-party individuals in order to protect

their personal privacy interests.  1st Luczynski Decl. ¶ 24.  EOUSA also categorically withheld

the records responsive to plaintiff's December 3, 2013 FOIA request, which specifically sought

information about Bobby Garrett, under Exemptions 6 and 7(C).  Finally, EOUSA withheld

portions of many records responsive to the part of plaintiff's March 26, 2013 request that the

agency did process under FOIA Exemptions 6 and 7(C).  1st Luczynski Decl. ¶¶ 22–23, 26–27.

---

5       Plaintiff also objects that the search was inadequate because it did not uncover certain
records related to Bryant Troupe.  Pl.'s Mot. at 50.  But, as the Court has already noted, EOUSA
properly determined that records related to third parties were categorically exempt from disclosure
under FOIA Exemptions 6 and 7(C), and so it did not conduct a search for those records.

Exemption 6 shields from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects information that was (1) compiled for law enforcement purposes, if (2) the disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). Because Exemption 7(C) involves a lower threshold than the one set forth in Exemption 6, which requires a "*clearly* unwarranted invasion" of privacy, *see id.* § 552(b)(6) (emphasis added), the Court will address Exemption 7(C) first. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989) (comparing Exemptions 7(C) and 6); *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health, Dep't of Health & Human Servs.*, 745 F.3d 535, 541 (D.C. Cir. 2014) (same).

To invoke Exemption 7(C), the agency must first make the threshold showing that the records were compiled for law enforcement purposes. 5 U.S.C. § 552(b)(7)(C); *see also Rural Hous. Alliance v. U.S. Dep't of Agric.*, 498 F.2d 73, 80 (D.C. Cir. 1974). Here, there is no dispute that the records withheld by EOUSA relating to the prosecution and conviction of plaintiff were compiled for law enforcement purposes.

Next, the agency must articulate a privacy interest that would be invaded by disclosure. *See Reporters Comm.*, 489 U.S. at 756. Here, EOUSA has identified legitimate privacy interests that would be invaded by the release of third-party information, including the interest in avoiding the "harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences" that might result from disclosure. 1st Luczynski Decl. ¶ 26; *see also Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003) (noting the strong privacy interest of "persons involved in law enforcement investigations – witnesses, informants, and the investigating agents – . . . 'in seeing

that their participation remains secret'"), quoting *Senate of P.R. ex rel Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 588 (D.C. Cir. 1987).

Once a legitimate privacy interest has been established, a FOIA requestor bears the burden of asserting a countervailing public interest in disclosure. *See, e.g.*, *Boyd*, 475 F.3d at 386–87; *Lewis v. U.S. Dep't of Justice*, 609 F. Supp. 2d 80, 84 (D.D.C. 2009); *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 47 (D.D.C. 2009).   The requestor "must (1) 'show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) 'show the information is likely to advance that interest.'"  *Boyd*, 475 F.3d at 387, quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).  Both the Court and the agency are required to "'balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information."  *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1174 (D.C. Cir. 2011), quoting *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992); *see also Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 96 (D.D.C. 2009).

"As a general rule, third-party identifying information contained in [law enforcement] records is 'categorically exempt' from disclosure," *Lazaridis v. U.S. Dep't of State*, 934 F. Supp. 2d 21, 38 (D.D.C. 2013), unless there is "an overriding public interest in disclosure."  *Lewis*, 609 F. Supp. 2d at 84, citing *Nation Magazine*, 71 F.3d 896.  The only relevant public interest that weighs into the calculus for purposes of Exemption 7(C) is "the citizens' right to be informed about 'what their government is up to,'" *Reporters Comm.*, 489 U.S. at 773, and "[t]hat purpose . . . is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct."  *Id.*

Applying those general principles, EOUSA determined that there was "no countervailing public interest" in the release of the third-party records, 1st Luczynski Decl. ¶ 27; 2d Luczynski Decl. ¶ 14, and so it did not proceed to balance the private and public interests with respect to those records. *See Judicial Watch*, 598 F. Supp. 2d at 96. Thus, the question before the Court is whether plaintiff has identified a public interest in disclosure that should have been weighed against the privacy interests EOUSA identified. *See Boyd*, 475 F.3d at 387.

Plaintiff contends throughout his pleadings that there is a public interest in the disclosure of the information he seeks because that information would expose government misconduct. *See, e.g.*, Pl.'s Mot. at 11 ("[T]here very well could be a public interest, if the government has erroneously applied [Exemptions 6 and 7(C)] to hide government misconduct."); *id.* at 15 ("The 'interviews' in the <u>Vaughn</u> index of Luczynski Decl., may be the very Jencks materials that should have been turned over to Trial Counsel Epstein."); *id.* at 47 ("[B]ecause these document [sic] may be the documents the government had promised to turn over under its Jencks agreement before trial, . . . there could be a strong 'public interest' for disclosure of the records."); *see also* Pl.'s Mot. to Expedite at 5 (contending that the Court should expedite the proceedings in this case on the basis of plaintiff's evidence of government misconduct).

Where a plaintiff asserts a public interest in uncovering government wrongdoing, "the requester must 'produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'" *Boyd*, 475 F.3d at 387, quoting *Favish*, 541 U.S. at 174. As explained further below, the Court finds that plaintiff has not made this

showing.   Therefore, plaintiff has not identified a public interest that outweighs the privacy

interests at stake here, and EOUSA's withholdings under 7(C) were appropriate.[6]

### 1. EOUSA's categorical withholding of information related to Troupe is justified.

Plaintiff stated in the March 26, 2013 FOIA request to EOUSA that he sought information

that he believed would "expose the bad-faith nondisclosure of Brady/Giglio/Jencks and Rule 16

materials and information of governmental misconduct with the discovery materials" in his

criminal case.  App. "Count I" to Compl. at ECF 8.  Plaintiff emphasized in the May 3, 2013 letter

that he was especially interested in records related to Bryant Troupe, whom plaintiff contends was

used as a government informant "in a covert operation in the investigation of Willie Boyd."  Ex.

D to 1st Luczynski Decl. at 1.  EOUSA categorically withheld "all records pertaining to third party

individuals," including records related to Troupe under Exemption 7(C).  1st Luczynski Decl. ¶ 24.

For the reasons that follow, the Court finds that this categorical withholding was justified.[7]

Plaintiff's interest in Troupe is not new, and the D.C. Circuit summarized the facts

underlying plaintiff's request for information about Troupe in a 2007 opinion:

> Following his trial, Boyd learned that his girlfriend's brother, Bryant
> Troupe, had been a government informant for several years and had sold
> drugs in the past.  This information was contained in the prosecutor's *Brady*
> disclosure letter in a case in which Troupe had testified as a government

---

[6]    For that reason, the Court will not address defendants' contentions with respect to Exemption 6.  *See Reporters Comm.*, 489 U.S. at 756.

[7]    Plaintiff's March 26, 2013 FOIA request also sought information "[o]n the Government witnesses that testified at the trial," and listed the names of fifteen individuals.  App. "Count I" to Compl. at ECF 9.  Plaintiff appears to contend that some of the withheld records described in EOUSA's *Vaughn* Index are responsive to this portion of his request.  *See* Pl.'s Mot. at 12 ("The interviews within the files of EOUSA may very well be the discovery materials on the government's testifying witnesses."); *id.* at 44–46 (expressing the suspicion that materials withheld under FOIA Exemption 3 would be responsive to this portion of plaintiff's request).  Thus, the Court will address plaintiff's request for information about the witnesses in its discussion of the withholdings described in the *Vaughn* Index.

informant.  *See Miller v. United States*, 135 F.3d 1254, 1255–56 (8th Cir. 1998).  Amicus [appointed by the court on Boyd's behalf] contends that this information . . . was withheld from Boyd during his criminal trial in violation of *Brady*.

*Boyd*, 475 F.3d at 384; *see also id.* at 385 (noting that plaintiff submitted FOIA requests seeking information about Troupe in 1998, 2003, and 2004).  In the case before the D.C. Circuit, as here, plaintiff contended that the information he sought should not be withheld under Exemption 7(C) because there is a public interest "in knowing whether *Brady*-related misconduct occurred during Boyd's criminal trial and whether the government generally complies with its *Brady* obligations." *Id.* at 387; *see also* Pl.'s Mot. at 11 ("[T]here very well could be a public interest, if the government has erroneously applied [Exemptions 6 and 7(C)] to hide government misconduct.").

With respect to the records withheld under Exemption 7(C), the D.C. Circuit found that Boyd and the Amicus appointed on his behalf had failed to identify a public interest in disclosure to be weighed against the privacy interests articulated by the government.  *Boyd*, 475 F.3d at 388. First, the court found that, "[e]ven after discovery, . . . Amicus ma[de] no showing that Boyd ha[d] identified anything withheld at his criminal trial but produced under FOIA that would suggest an actual *Brady* or Jencks violation."  *Id.* at 387.  Second, the court dismissed the allegation that Boyd's trial counsel had never received potentially exculpatory information from the government, noting that "letters the prosecutor wrote in 1998 suggest that the documents at issue were turned over," that it was "doubtful that a reasonable person would infer government misconduct from unsworn letters from defense counsel years after Boyd's 1998 conviction," and that Boyd had "offer[ed] no reason for the government to have been selective in its production."  *Id.* at 387–88. Finally, the court found that "the discovery of the [ATF] agent's work file during Boyd's FOIA litigation" was not evidence of government misconduct because "[n]either Amicus nor Boyd . . .

[had] produce[d] any evidence that the work file actually contained *Brady* or Jencks material that had not been disclosed." *Id.*

In the case now pending before the Court, plaintiff's allegations of government wrongdoing are substantially similar to the claims he and the Amicus advanced before the D.C. Circuit. Plaintiff contends that the government failed to provide potentially exculpatory information to his counsel at trial, including discovery disclosure letters, witness interviews, materials found in an ATF agent's work file, and "any discovery material on Bryant Troupe's role as a government paid informant." Pl.'s Mot. at 13.

Plaintiff maintains that there are "new facts and changed circumstances" that were not available in 2007 that should lead the Court to a different conclusion than the one reached by the D.C. Circuit. *See id.* at 27. He points to the following evidence:  (1) unredacted versions of two April 15, 1998 discovery letters in plaintiff's criminal case that EOUSA apparently released in full for the first time in response to plaintiff's March 26, 2013 FOIA request; (2) a sworn affidavit by Carl Epstein, plaintiff's criminal trial counsel; and (3) an affidavit by another attorney, Paul Sims. *Id.* at 24–25.

First, plaintiff argues that the unredacted versions of two discovery letters that discuss Troupe are proof that the government wrongfully withheld information from him at the time of his trial. Pl.'s Mot. at 27–29; *see also id.* at 30–31 (contending that "[t]he deception carried out by the government with its deliberate suppression and concealment of the April 15, 1998 discovery letters, undermined the prior FOIA-Litigation, and Deceived the Court and the Plaintiff").  Both letters are dated April 15, 1998, and both indicate that they were hand-delivered to plaintiff's trial

counsel, Carl Epstein.  *See* App. B(S) to Pl.'s Mot. [Dkt. # 28-3] at ECF 128[8] ("First April Letter");
*Id.* at ECF 129–30 ("Second April Letter").   But plaintiff contends that Epstein never received
either one.  Pl.'s Mot. at 32.  Plaintiff also alleges that he was "framed by overzealous prosecutors,"
and that "the government has been covering up the misconduct" by withholding the contents of
these letters.[9]  *Id.* at 29.

    In the first letter, Assistant U.S. Attorney ("AUSA") Gary M. Gaertner, Jr. stated that
Special Agent James Green and the U.S. government had provided funds to Troupe to assist him
in relocating from the St. Louis area "due to a threat that he received involving the case of United
States v. Willie E. Boyd," and "for his safety in the United States v. Willie E. Boyd [sic]."  First
April Letter at ECF 128.  The letter also states that the government spent a total of $2,953.90 to
help Troupe relocate, and that it had not provided any other resources to Troupe, nor "entered into
any agreements with Mr. Troupe regarding his testimony in the case of United States v. Willie E.
Boyd."  *Id.*

    The second letter, also from AUSA Gaertner, states that the government provided Troupe
$2,953.90 to assist him in relocating "due to a threat that he received involving" plaintiff's case,
and "for his safety in the United States v. Byron James Miller [sic]."  Second April Letter at ECF
129.  The letter further states that AUSA Gaertner had enclosed a copy of Troupe's testimony in
the *Miller* case because Epstein had "indicated to [Gaertner] in Court the other day that [Epstein]

---

8    Plaintiff submitted the following attachments to his motion for summary judgment and
opposition: his own declaration (34 pages) [Dkt. # 28-1], Appendix A (155 pages) [Dkt. # 28-2],
and Appendix B (209 pages) [Dkt. # 28-3].  Appendices A and B are subdivided into numerous
smaller appendices that are also designated by letter.  Thus, the citation to App. B(S) to Pl.'s Mot.
refers to sub-appendix S of appendix B.  The Court cites to the ECF pagination for further clarity.

9    The Court notes that EOUSA has offered no explanation as to why it chose to release these
two letters in full, after apparently refusing to do so in response to previous FOIA requests and
other efforts by plaintiff.  Indeed, defendants do not address these letters at all in their pleadings.

previously reviewed a copy, but [Epstein] left it in Indianapolis." *Id.*  Gaertner also states that he

is enclosing "a copy of Mr. Bryant Troupe's Grand Jury testimony on May 28, 1997," "a copy of

a written affidavit by Bryant Troupe which is dated September 27, 1997," "a copy of Agent Jim

Green's report dated 10-9-97," and "a copy of a tape of a conversation between Sharon Troupe

and Bryant Troupe referenced in the report of 10-9-97." *Id.* at ECF 129–30.

Plaintiff claims that his trial counsel never received either letter or the materials referenced

within the second letter.  Pl.'s Mot. at 32.  He further contends that the fact that one of the

government's letters refers to concerns about Troupe's safety because of Boyd's case, and the

other refers to concerns about Troupe's safety because of the *Miller* case, is a "contradiction" that

constitutes evidence that "[t]he government had been deceptive with the information in its files on

Troupe, because it paid Bryant Troupe for his covert activity in the plaintiff's criminal case, not

for his relocation." *Id.* at 37–38.  But there is nothing about the slight difference between the

letters that would cause a reasonable person to infer that government misconduct had occurred;

indeed, the two statements are not necessarily contradictory, since it is conceivable that Troupe's

relationship to both the *Boyd* and *Miller* cases could lead the government to help him relocate.[10]

*See Boyd*, 475 F.3d at 388.  Moreover, the letters – and the differences between them – do not

support plaintiff's claim that "the government used rogue informant Bryant Troupe in a covert

operation against plaintiff, to frame an innocent man."  *See* Pl.'s Mot. at 29.  And, finally, the

letters do not substantiate plaintiff's claim that the government withheld this information from trial

counsel.[11]  Therefore, even though the unredacted letters may be "new" evidence, they are not

---

10      The Court notes that defendants have not offered to explain why the two letters differ.

11      Moreover, nothing in the letters supports plaintiff's contention that EOUSA has waived its
reliance on Exemption 7(C) to withhold information about Troupe.  *See* Pl.'s Mot. at 27–28; Pl.'s
Reply at 3.

evidence that would cause a reasonable person to infer government misconduct.  *See Boyd*, 475

F.3d at 388.

The affidavit of Carl Epstein, who represented plaintiff during his criminal trial, is

plaintiff's second piece of evidence of "new facts and changed circumstances."  *See* Pl.'s Mot. at

24–25, 27.  In this affidavit, dated July 31, 2014, Carl Epstein avers that that the two April 1998

letters "were never delivered to" him and that he "received no documents or information from the

government on any expenditures totaling 2,953.90 dollars provided or paid on behalf of Bryant

Troupe by SA James Green, or the government."  Aff. of Carl Epstein (July 31, 2014), App. B(S)

to Pl.'s Mot. [Dkt. # 28-3] at ECF 126, ¶ 2.  Epstein also states that he "did not receive any of the

discovery related materials from the government listed in the April 15, 1998 cover letter,"

including Troupe's testimony in the *Miller* case, Troupe's grand jury testimony in Boyd's case,

Troupe's affidavit, Green's report, and the taped conversation.  *Id.* at ECF 126–27, ¶ 3.  Finally,

Epstein states that "the government never provided [him] with any documents concerning Bryant

Troupe's role as a paid informant" or on "Troupe and his role in Boyd's criminal case."  *Id.* at ECF

127, ¶ 4.

But Epstein's affidavit does nothing more than restate the same contentions that the D.C.

Circuit already concluded did not constitute evidence of government misconduct.  *See Boyd*, 475

F.3d at 387–88.  As noted above, the court held that there was no basis to infer that the government

had withheld purportedly exculpatory information from Epstein, given that it had undisputedly

released exculpatory grand jury testimony to Boyd that implicated Troupe, and that "letters the

prosecutor wrote in 1998 suggest that the documents at issue were turned over."  *Id.*  The court

also observed that it was "doubtful that a reasonable person would infer government misconduct

from unsworn letters from defense counsel years after Boyd's 1998 conviction."  *Id.*  The fact that

Epstein's contentions are now contained within a sworn affidavit instead of an unsworn letter does not constitute a change that is material, and so the D.C. Circuit's conclusion on this issue remains binding on the Court.

Finally, the affidavit of Paul Sims does not constitute a new fact or changed circumstance that is sufficient to alter the outcome here.  Sims is an attorney who was apparently retained to represent plaintiff in a recent attempt to challenge his criminal conviction.  *See* Letter from Paul E. Sims, Sims & Bailey, LLC, to Richard G. Callahan, United States Attorney for the Eastern District of Missouri (Mar. 9, 2011), App. B(V) to Pl.'s Mot. [Dkt. # 28-3] at ECF 148–49.  Sims states in an affidavit dated September 23, 2013, that he requested unredacted copies of the April 1998 letters and ATF Agent Green's personal case file related to Boyd from U.S. Attorney Richard G. Callahan, and that he received no response from the government until he filed a motion to compel disclosure of the information on December 5, 2011.  Aff. of Paul Sims (Sept. 23, 2013), App. B(V) [Dkt. # 28-3] at ECF 145–46, ¶¶ 2–4.  According to Sims, the government responded to his motion on February 8, 2012, stating that it would provide "the letter," and it did not respond to the request for the case file.  *Id.* at ECF 146, ¶ 4.  Sims avers that he has not yet received any April 1998 letters from the government.  *Id.*  But the fact that Sims did not receive information in 2012 or 2013 sheds no light on the question of what information plaintiff's trial counsel may have received from the government in 1997 or 1998, and so it does not indicate that the government wrongfully withheld potentially exculpatory material at the time of plaintiff's trial.

In sum, the Court finds that none of the "new" evidence plaintiff cites is material, and so it does not alter the conclusion of the D.C. Circuit that, on this record, a reasonable person would not "conclude that the . . . allegations of government malfeasance might be true."  *Boyd*, 475 F.3d at 388.  The Court is therefore bound by the D.C. Circuit's finding that plaintiff has not articulated

24

a public interest to be balanced against the privacy interests at issue here. Thus, the Court concludes that EOUSA properly applied Exemption 7(C) to categorically withhold information responsive to plaintiff's request for information about Troupe.

### 2. EOUSA's categorical withholding of information related to Garrett is justified.

EOUSA also categorically withheld all records responsive to plaintiff's December 3, 2013 FOIA request because that request exclusively sought information about former St. Louis police officer Bobby Garrett.[12] *See* 2d Luczynski Decl. ¶ 11; *see also* App. to Am. Compl. at ECF 4–5. Garrett was among the officers who arrested plaintiff in 1995, and he testified at plaintiff's trial in 1998. *See Boyd*, 180 F.3d at 972–73, 979. The Court finds that this withholding was proper.

According to a newspaper article provided by plaintiff, Garrett was convicted in 2009 of various crimes he committed in 2007 and 2008, including "theft of government property, conspiracy to commit wire fraud, making false statements and misapplication of government funds." App. B(M) to Pl.'s Mot. at ECF 67 (undated newspaper article). Apparently, Garrett's conviction led to the revising of criminal sentences in some cases. *See* App. B(N) to Pl.'s Mot. at

---

12      The information plaintiff requested about Garrett included:

> [A]ny investigations of his wrongdoing or governmental corruption by Garrett. How many defendants had been released based on the corruption by Bobby Garrett and others. How many cases Bobby Garrett testified in on behalf of the Government. Any and all complaints filed against Bobby Garrett about his corruption in the files of the Government. Requesting information about search warrants found to be invalid based on wrongdoing by Bobby Garrett. The amount of cash money illegally taken by Bobby Garrett from citizens while he was acting as an [sic] St. Louis Police Officer.

App. to Am. Compl. at ECF 4. Plaintiff also sought information about defendants who had been exonerated "doing [sic] to Bobby Garrett being exposed as a corrupt cop," public records on Garrett, a list of properties Garrett had illegally entered, and information about the relationship between Garrett and Bryant Troupe. *Id.* at ECF 4–5.

ECF 71–73 (opinion in *Cox v. United States*, No. 4:10CV01572CEJ, 2010 U.S. Dist. LEXIS 131437 (E.D. Mo. Dec. 13, 2010) partially overturning Cox's sentence because of Garrett's false testimony at his trial); App. B(O) to Pl.'s Mot. at ECF 75–80 (opinion in *Holmes v. United States*, No. 4:08-CV-1142 (CEJ), 2011 U.S. Dist. LEXIS 109425 (E.D. Mo. Sept. 26, 2011) granting new trial to Holmes based on Garrett's false testimony).

Plaintiff argues that "Garrett should have no personal privacy" interest in the information plaintiff seeks "because of his criminal acts against citizens he swore to protect." Pl.'s Mot. at 16. He also contends that the release of the requested information would not "cause [Garrett] any undue harassment, harm, or exposure to unwarranted and/or derogatory publicity and inferences." *Id.* at 17. In addition, plaintiff claims that there is a strong public interest in the disclosure of the information he seeks about Garrett because the government was "complicit in Garrett's wrongdoing," *id.* at 16, and it has "deliberately suppressed and altered discoverable materials . . . to keep Bobby Garrett's criminal acts from being exposed."[13] *Id.* at 17; *see also* Pl.'s Reply at 7 ("The Plaintiff's argument is that the government has been complicit in Bobby Garrett's wrongdoing, and based on the government's acts of misconduct there is a public interest for records on former rogue cop Bobby Garrett, in the files of Defendant EOUSA.")

Even if Garrett's conviction might diminish his privacy interest in this case, it does not eliminate it entirely. *See Roth*, 642 F.3d at 1174 (holding that convicted criminals who were the subjects of the plaintiff's FOIA requests retained a privacy interest in law enforcement information

---

13    Plaintiff also argues that EOUSA has acted in bad faith "by omitting the two-St. Louis Post-Dispatch articles on rogue cop Bobby Garrett . . . from Plaintiff's FOIA correspondence document request in their declaration." Pl.'s Mot. at 55. Because the Court concludes that EOUSA's withholdings with respect to Garrett were justified, it need not assess this contention, but it notes that the omission of two publicly available newspaper articles – which plaintiff himself provided to the Court – is not likely to constitute evidence of bad faith.

related to them); *see also Taplin ex rel. Lacaze v. U.S. Dep't of Justice*, 967 F. Supp. 2d 348, 355 (D.D.C. 2013) (holding that a third party's privacy interest for purposes of Exemption 7(C) was diminished, but not demolished, when it was already publicly known that he had been wanted by the FBI). Therefore, plaintiff must still establish the existence of a countervailing public interest in disclosure by pointing to evidence that would cause a reasonable person to infer that his allegation that the government was "complicit in Garrett's wrongdoing," Pl.'s Mot. at 16, might be true. *See Boyd*, 475 F.3d at 388.

As evidence of this purported government misconduct, Boyd points to three documents that he claims were withheld from his counsel during his criminal trial: (1) a "prisoner processing" document dated November 7, 1995, which plaintiff alleges contradicts Garrett's testimony at trial that plaintiff possessed a set of keys when he was arrested, Pl.'s Mot. at 19; *see also Boyd*, 180 F.3d at 973 (noting Garrett's testimony about the keys); (2) a "real" copy of the St. Louis police report related to plaintiff's arrest, Pl.'s Mot. at 19–20; and (3) trial counsel Epstein's statements in an affidavit that he was not given a copy of the "prisoner processing" document or the "real" police report. *Id.*

According to plaintiff, EOUSA's most recent release of records included a "prisoner processing" document that had never before been provided to plaintiff by that agency. Pl.'s Mot. at 19; *see also* App. A(H) to Pl.'s Mot. at ECF 97–98 (version of "prisoner processing" record released to plaintiff by EOUSA in February 2014 that contains some redactions); App. B(R) to Pl.'s Mot. at ECF 111–12 (version of "prisoner processing" record apparently released to plaintiff in 2002 by ATF that contains different redactions). The "prisoner processing" document lists the property taken from plaintiff at the time of his arrest, and it does not mention any keys. *See* App. A(H) to Pl.'s Mot. at ECF 98; App. B(R) to Pl.'s Mot. at ECF 112.

Plaintiff contends that this record was wrongfully withheld during the trial, and he suggests that it could have been used to impeach Garrett's testimony about plaintiff possessing keys.  Pl.'s Mot. at 19; *see also* Statement of Carl L. Epstein (Dec. 27, 2011), App. A(B) to Pl.'s Mot. at ECF 39, ¶ 9(d) (stating that Epstein never received the record).  Plaintiff further argues that the release of this record by EOUSA indicates that "[t]he Government knew that plaintiff had no keys in his possession when arrested by Bobby Garrett," and that "[t]he Government aided Bobby Garrett in his false testimony by deliberately suppressing the document.  Pl.'s Mot. at 19.

The Court has already determined that Epstein's statements, sworn or otherwise, are not enough to generate a reasonable inference of possible government malfeasance, especially in light of the D.C. Circuit's ruling on almost exactly the same issue.  *See Boyd*, 475 F.3d at 387–88.  And plaintiff has not offered new evidence to show that he never received the materials he contends were wrongfully withheld from him at trial.  Moreover, even if plaintiff is correct that his counsel never received this "prisoner processing" record, that would still not be enough to substantiate the weighty claim that the government "deliberately suppress[ed]" the information.[14]  *See* Pl.'s Mot. at 19.  Therefore, the prisoner processing document and Epstein's contentions about it would not

---

[14]     On March 6, 2015, plaintiff filed a "Judicial Notice," [Dkt. # 36], asking the Court to take note of *Marino v. DEA*, 15 F. Supp. 3d 141 (D.D.C. 2014), a case in which another court in this district rejected the DEA's reliance on FOIA Exemption 7(C) to categorically withhold information about its relationship with a cooperating witness in Marino's criminal case.  *See id.* at 156–58.  The court found that Marino's evidence suggested that "the Government built its case on an unreliable witness and ignored red flags that he was underplaying his role in the conspiracy – and potentially exaggerating Marino's – in order to win lenience from the Court and the Government."  *Id.* at 155.  The court further found the credibility of that witness had been "absolutely critical" to Marino's conviction.  *Id.*  In light of these findings, the court determined that Marino had carried her "evidentiary burden to show that the Government 'might' have fallen below an acceptable standard of care to ensure the integrity of the proceedings."  *Id.*  In this case, unlike the *Marino* case, the Court has Circuit precedent on the point to follow, and it finds that Boyd has not pointed to any new "red flags" that would cause a reasonable person to infer that government misconduct might have occurred.

cause a reasonable person to infer that government misconduct might have occurred.  *See Boyd*, 475 F.3d at 388.

Plaintiff's only other evidence of government malfeasance with respect to Garrett is the police incident report of plaintiff's arrest that was disclosed by ATF in 2002 in response to a FOIA request.  *See* Pl.'s Mot. at 19–20; *see also* App. B(R) to Pl.'s Mot. at ECF 115–24.  Plaintiff contends that a comparison between the copy of the report he received from ATF and the copy that was provided to him by the government in 1997, *see* App. B(P) to Pl.'s Mot. at ECF 91–96, reveals that the earlier copy was "fabricated" or "fake."  Pl.'s Mot. at 19–20.  As evidence of this fabrication, plaintiff alleges that the version given to his trial counsel was "a manually [sic] reproduction of the original police report" that also "omitted two-pages."  *Id.* at 19.  Plaintiff maintains that, by giving him this "fake" report, the government denied him due process of law and sought to "alter evidence that would prove Bobby Garrett was not a credible witness."[15]  *Id.*

The Court finds that nothing about the two copies of the police report indicates that government misconduct might have occurred.  First, it is true that plaintiff received a copy of the report in 1997 that was a higher-quality reproduction than the version he received from ATF in 2002.  *Compare* App. B(P) to Pl.'s Mot. at ECF 91–96, *with* App. B(R) to Pl.'s Mot. at ECF 115– 24.  But there is nothing about the differing quality of the two reproductions that would cause a reasonable person to infer the possibility of government misconduct, particularly in light of the fact that the contents of the two reports are the same.

---

15       Plaintiff also notes that the version of the report he received from ATF contains two pages marked "Page 3," and he contends that one is "real" and that the other is "fake."  *Id.* at 20; *see also* App. B(R) to Pl.'s Mot. at ECF 117–18 (the two versions of "Page 3").  But the two copies of "Page 3" appear to be largely identical, except that one version contains more redactions than the other, and one version is a higher-quality reproduction than the other.  *See* App. B(R) to Pl.'s Mot. at ECF 117–18.  The Court cannot see how these trivial differences would support an inference of potential government wrongdoing.

Plaintiff's allegations about the missing pages of the police report are also not sufficient to carry his burden here. Plaintiff claims that the government omitted a "property receipt" from the police report it provided to plaintiff's trial counsel, and that this receipt showed that "$775.00 dollars was seized by rogue cop Bobby Garrett, and could not be accounted for." Pl.'s Mot. at 21; *see also* App. B(R) to Pl.'s Mot. at ECF 123 (the property receipt). To support his claim that he never received this information, plaintiff points to what appears to be the version of the police report that was sent to his counsel in 1997, *see* App. B(P) at 90–96, and a statement by Epstein that he never received parts of the police report. *See* Statement of Carl L. Epstein (Dec. 27, 2011), App. A(B) to Pl.'s Mot. at ECF 39, ¶ 9(c).

Whether one credits Epstein's recollection or not, it is true that the version of the police report produced by ATF does include two pages that original version lacks, *compare* App. B(R) to Pl.'s Mot. at ECF 115–23, *with* App. B(P) to Pl.'s Mot. at ECF 91–96, and that one of these pages is a "property receipt" indicating the seizure of $775.00 from plaintiff. *See* App. B(R) at ECF 123. But even if these two pages were not given to plaintiff's counsel in 1997, that omission is not material for the purpose of this case, because the parts of the police report that plaintiff concedes his counsel did receive also reflect that $775 was taken from plaintiff by Garrett. *See* App. B(P) to Pl.'s Mot. at ECF 92. Under these circumstances, the Court cannot see how a reasonable person could infer that the omission of these two pages, if it occurred, rises to the level of potential evidence of government misconduct. In the end, plaintiff has pointed to nothing that took place in connection with his case that would warrant opening the records of the investigation into Garrett's crimes, which occurred nearly ten years later, to him.

### 3.   **EOUSA's other withholdings under Exemption 7(C) are justified.**

EOUSA identified a total of 607 pages of records that were responsive to the portion of plaintiff's March 26, 2013 FOIA request that related to plaintiff, and it withheld the names and other identifying information of third parties, witness, and law enforcement personnel from nearly every one of the 13 responsive records under FOIA Exemptions 7(C) and 6.  *See* 1st Luczynski Decl. ¶ 8; *see also Vaughn* Index.  The Court has already determined that the records in question here were compiled for a law enforcement purpose and that they implicate the privacy interests of third parties, including the witnesses named in plaintiff's March 26, 2013 FOIA request.  *See* App. "Count I" to Compl. at ECF 9.

Plaintiff contends that EOUSA is using its Exemption 7(C) withholdings to mask government malfeasance, and so there is a public interest in disclosure, but he offers nothing more than his own speculation to support that claim.  *See, e.g.*, Pl.'s Mot. at 11 ("[T]here very well could be a public interest, if the government has erroneously applied [Exemptions 6 and 7(C)] to hide government misconduct."); *id.* at 15 ("The 'interviews' in the <u>Vaughn</u> Index of Luczynski Decl., may be the very Jencks materials that should have been turned over to Trial Counsel Epstein."); *id.* at 47 ("Because these document [sic] may be the documents the government had promised to turn over under its Jencks agreement before trial, . . . there could be a strong 'public interest' for disclosure of the records.").  Allegations of government misconduct "are 'easy to allege and hard to disprove,'" and plaintiff's speculation does not constitute "'evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'"  *See Judicial Watch, Inc. v. U.S. Dep't of Justice*, 898 F. Supp. 2d 93, 105 (D.D.C. 2012), quoting

*Favish*, 541 U.S. at 174–75.  Therefore, the Court finds that the withholdings under Exemption 7(C) that are described in the *Vaughn* Index are proper.[16]

### C.  EOUSA's reliance on Exemption 3 is not fully justified.

Exemption 3 permits an agency to withhold information that is "specifically exempted from disclosure by statute."  5 U.S.C. § 552(b)(3).  EOUSA invokes Exemption 3 in conjunction with a provision of the Ethics in Government Act, 5 U.S.C. app. 4 § 107(a)(2), and Rule 6(e) of the Federal Rules of Criminal Procedure.  *See Vaughn* Index at 2–3, 5.

EOUSA cites the provision of the Ethics in Government Act as justification to withhold document 3 in full.  *Id.* at 2.  Document 3 is described as consisting of "[d]ocuments titled 'Conflict of Interest Certification,'" and no other detail or description is provided.  *Id.*  In the *Vaughn* Index, EOUSA contends that, "[p]ursuant to United States Code 5 U.S.C. app. [4] § 107(a)(2) conflict of interest forms are not subject to FOIA."[17]  *Id.*  But the cited provision says nothing about "conflict of interest forms"; rather, it states that, when a government ethics office requires its employees to file confidential financial disclosure reports, those reports "shall not be disclosed to the public."  5 U.S.C. app. 4 § 107(a)(2).  EOUSA has not explained why document 3 is the type of record that is covered by this provision, nor has it described the record in enough detail to permit the Court to grant judgment to EOUSA on this withholding.  *See Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996) ("Summary judgment may not be appropriate . . . when agency affidavits in support of a claim of exemption are insufficiently detailed . . . .").

---

16     The Court notes that it does not appear that EOUSA relied on Exemption 7(C) to withhold in full any of the records described in the *Vaughn* Index, *see Vaughn* Index, and so it will next consider the other FOIA exemptions that the agency invoked.

17     EOUSA does not discuss this withholding or describe this record further in any other part of its pleadings or affidavits.

EOUSA withheld documents 4, 7, and 8 in full, citing FOIA Exemption 3 in conjunction with Rule 6(e).  *See Vaughn* Index at 3, 5.  Rule 6(e) prohibits, with exceptions, the disclosure of "matter[s] occurring before [a] grand jury."  Fed. R. Crim. P. 6(e)(2).  Rule 6(e) qualifies as a "statute" for purposes of Exemption 3 because it was affirmatively enacted by Congress.  *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867 (D.C. Cir. 1981).  But Rule 6(e) should not be read so literally as to draw "'a veil of secrecy . . . over all matters occurring in the world that happen to be investigated by a grand jury.'"  *Senate of P.R.*, 823 F.2d at 582, quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc).  "There is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers."  *Id*.  Rather, "the touchstone is whether disclosure would tend to reveal some secret aspect of the grand jury's investigation," such as "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like."  *Id.* (citations and internal quotation marks omitted).

Documents 4 and 7 are described as transcripts from grand jury proceedings and testimony. *See Vaughn* Index at 3, 5.  Although Exemption 3 and Rule 6(e) do not protect "any and all information which has reached the grand jury chambers" from disclosure, *see Senate of P.R.*, 823 F.2d at 582, grand jury testimony is precisely the type of information that the provision is designed to protect.  *See id.* (stating that information such as "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, [and] the deliberations or questions of jurors" is protected by Rule 6(e)); *see also Fund for Constitutional Gov't*, 656 F.2d at 869 (stating that "the scope of the secrecy" under Rule 6(e) "is necessarily broad" and that "[i]t encompasses . . . the direct revelation of grand jury transcripts").  Thus, the Court finds that

EOUSA properly withheld documents 4 and 7 from plaintiff in full, and that no portion of those records was reasonably segregable.

Document 8, however, is described as a "[s]eries of communication letters between attorneys handling the case" that includes discussion of "items relating to the Grand Jury, and case strategy." *Vaughn* Index at 5. This description is simply not detailed enough for the Court to determine whether disclosure of document 8 "would tend to reveal some secret aspect of the grand jury's investigation," *see Senate of P.R.*, 823 F.2d at 582 (citations and internal quotation marks omitted), and so the Court cannot find that EOUSA's reliance on Exemption 3 and Rule 6(e) to withhold this record in full was justified.[18]

### D. EOUSA's reliance on Exemption 5 is not fully justified.

EOUSA withheld the documents numbered 1, 2, 6, and 8 in part or in full under FOIA Exemption 5. *See Vaughn* Index at 1–5. Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *see also U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (holding that a record may be withheld under Exemption 5 only if "its source [is] . . . a Government agency, and it . . . fall[s] within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it"). Exemption 5 "encompass[es] the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including the attorney-client privilege, the attorney work-product privilege, and the executive "deliberative process" privilege. *Taxation with Representation Fund v. IRS*, 646 F.2d

---

18      EOUSA also invokes Exemption 5 as a basis for withholding this record in full, but for the reasons stated below, the Court finds that the agency has not justified its reliance on that exemption, either.

666, 676 (D.C. Cir. 1981).   Here, EOUSA invokes the work-product and deliberative process privileges.

The attorney work-product privilege protects materials that reflect the "'mental processes of the attorney,'" *Klamath*, 532 U.S. at 8, quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975), when the materials were "'prepared in anticipation of litigation or for trial.'" *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005), quoting Fed. R. Civ. P. 26(b)(3).   An agency can satisfy the "anticipation of litigation" standard by "demonstrating that one of its lawyers prepared a document in the course of an investigation that was undertaken with litigation in mind," even if no specific lawsuit has begun.   *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1202 (D.C. Cir. 1991).

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government."   *Klamath*, 532 U.S. at 8–9 (citations omitted), quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).   Thus, the privilege only "protects agency documents that are both predecisional and deliberative."   *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006); *accord McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011).   "[A] document [is] predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'"   *Judicial Watch*, 449 F.3d at 151, quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Plaintiff contends that EOUSA's reliance on Exemption 5 is not justified.   Pl.'s Mot. at 9–10.   He complains that EOUSA has not shown that any of the relevant records are "inter-agency

or intra-agency memorandums or letters," *see* 5 U.S.C. § 552(b)(5), and that it failed to provide the dates of creation of the documents.[19] *Id.* at 10. In addition, plaintiff contends that EOUSA's *Vaughn* Index does not clearly state whether document number 6 was withheld in part or in full under Exemption 5. *Id.* at 9 n.1.

The Court has considered plaintiff's objections, as well as the justifications and explanations provided by EOUSA in its *Vaughn* Index, affidavit, and pleadings, and the Court makes the following rulings on the propriety of defendants' Exemption 5 withholdings:

- Document 1. This fifteen-page record consists of "[c]opies of interviews conducted by the attorneys involved in the case of various third party individuals." *Vaughn* Index at 1. EOUSA asserts that the attorney work product and deliberative process privileges justify withholding this record in full.[20] *Id.* The Court finds that EOUSA has not adequately established that this record is shielded by either privilege. First, EOUSA has not explained how "copies of interviews of third parties" constitute "inter-agency or intra-agency memorandums or letters." *See* 5 U.S.C. § 552(b)(5). Second, EOUSA has not explained why such a record would reflect the "'mental processes of the attorney.'" *Klamath*, 532 U.S. at 8, quoting *Nobles*, 422 U.S. at 238. And, third, EOUSA has not stated that this record preceded any particular decision, or explained how it "'reflects the give-and-take of the consultative process.'" *See Judicial Watch*, 449 F.3d at 151, quoting *Coastal States*, 617 F.2d at 886.

- Document 2. This four-page record is a "Case Initiation Form" that was "prepared by an attorney" and that "list[s] various particulars regarding the Plaintiff's case." *Vaughn* Index at 2. EOUSA withheld this record in full under Exemption 5, the attorney work-product privilege, and the deliberative process privilege. *Id.* The Court finds that EOUSA's reliance on the attorney work-product privilege is justified, and that EOUSA has shown that no portion of the record was reasonably segregable.[21] First, EOUSA's description of the record sufficiently indicates that it qualifies as an "inter-agency or intra-agency memorandum," *see* 5 U.S.C. § 552(b)(5), and that it was prepared "in the course of an investigation that was undertaken with litigation in mind." *SafeCard*

---

19     Plaintiff also asserts that "EOUSA has abandoned its contentions in the Declaration of Luczynski, at ¶ 21, by failing to rely on it." Pl.'s Mot. at 10. But the relevant declaration is part of the record in this case, and so no abandonment has occurred.

20     EOUSA has also invoked FOIA Exemption 7(C) to withhold third-party identifying information from document 1, which the Court has already determined was proper.

21     For that reason, the Court need not consider whether EOUSA properly relied on the deliberative process privilege.

*Servs.*, 926 F.2d at 1202.  And, second, an attorney-prepared "case initiation form" would necessarily reflect the "'mental processes of the attorney,'" *Klamath*, 532 U.S. at 8, quoting *Nobles*, 422 U.S. at 238, and would constitute attorney work product in its entirety.

- Document 6.  This five-page record is a "[c]ommunication sent among [v]arious individuals involved in the case." *Vaughn* Index at 4.  EOUSA states that its "[r]edactions cover third party information as well as thoughts and opinions of attorneys regarding the case." *Id.*  EOUSA provides no other description of this record, and without further information, the Court cannot conclude that its reliance on Exemption 5 is justified.  As a threshold matter, because EOUSA offers no clue as to the identities or occupations of the "various individuals" involved in this "communication," the Court cannot determine whether this it constitutes an "inter-agency or intra-agency" memorandum or letter.  *See* 5 U.S.C. § 552(b)(5).  Moreover, the absence of virtually any detail about this record prevents the Court from determining whether any of the other requirements of Exemption 5 have been met.  Finally – as plaintiff points out – it is not clear whether this record was released in full or in part:  although the "status" column in the entry for document 6 contains the abbreviation "RIP," which stands for "released in part," the "justification" column states that "[d]isclosure of any portion of the document would disclose attorney work product and the deliberative process concerning a particular case, thus the document is not segregable." *Vaughn* Index at 4–5; *see also id.* at 1 (explaining the "RIP" abbreviation).

- Document 8.  This six-page record is comprised of a "[s]eries of communication letters between attorneys handling the case," and was withheld in full.  *Vaughn* Index at 5.  EOUSA states that the "[t]opics discussed are various third parties, items relating to the Grand Jury, and case strategy." *Id.*  Although it is possible that this record constitutes an "inter-agency or intra-agency" memorandum or letter that was "'prepared in anticipation of litigation or for trial,'" *see Judicial Watch*, 432 F.3d at 369, quoting Fed. R. Civ. P. 26(b)(3), EOUSA's description is too general for the Court to conclude that it has carried its burden to establish that Exemption 5 applies.  *See* 5 U.S.C. § 552(a)(4)(B).  Moreover, the agency has failed to fulfill its "obligation to show with 'reasonable specificity'" that there were no reasonably segregable portions of this record.  *See Johnson*, 310 F.3d at 776, quoting *Armstrong*, 97 F.3d at 578–79.  Thus, EOUSA's reliance on Exemption 5 to withhold document 8 is not justified.

### E. EOUSA's withholdings under the Privacy Act are justified.

The Privacy Act provides that "[e]ach agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him . . . ."  5 U.S.C. § 552a(d)(1).  Exemption

(j)(2) applies, in relevant part, to records that are:  (1) stored in a system of records that has been designated by an agency to be exempt from the Privacy Act's disclosure requirements; and (2) stored in a system that is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws," and that consists of "information compiled for the purpose of a criminal investigation."[22]  *Id.* § 552a(j)(2)(B).

When a plaintiff challenges an agency's withholding of documents under the Privacy Act, the court determines *de novo* whether the withholding was proper, and the burden is on the agency to sustain its action.  5 U.S.C. § 552a(g)(3)(A); *Doe v. United States,* 821 F.2d 694, 697–98 (D.C. Cir. 1987) (en banc).  And when a request for documents is made under both FOIA and the Privacy Act, the responding agency "must demonstrate that the documents fall within some exemption under *each* Act."  *Martin v. Office of Special Counsel, Merit Sys. Protection Bd.*, 819 F.2d 1181,

---

22      In full, Privacy Act Exemption (j)(2) provides:

> (j) General exemptions. – The head of any agency may promulgate rules . . . to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is – . . .

> (2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j), (j)(2).

1184 (D.C. Cir. 1987). "If a FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA." *Id.*

EOUSA contends that all of the records responsive to plaintiff's FOIA requests were exempt from disclosure under Privacy Act Exemption (j)(2). 1st Luczynski Decl. ¶ 13; 2d Luczynski Decl. ¶ 8. The agency explains that all "[c]riminal case files maintained by U.S. Attorney's Offices are part of the DOJ Privacy Act System of Records," and that "[t]he Attorney General has promulgated regulations at 28 C.F.R. § 16.81(a)(1) which exempts U.S. Attorney's Office criminal case files . . . from the [Privacy Act's] access provisions as authorized by 5 U.S.C. § 552a(j)(2)." 1st Luczynski Decl. ¶ 13; 2d Luczynski Decl. ¶ 8. Moreover, it is plain that EOUSA's "principal function" involves the enforcement of criminal laws, and that the records sought by plaintiff consist of "information compiled for the purpose of a criminal investigation." *See* 5 U.S.C. § 552a(j)(2)(B). Thus, EOUSA properly determined that Privacy Act Exemption (j)(2) applies to the records sought by plaintiff in this case.

## II.     ATF's Response to Plaintiff's FOIA Request

Plaintiff submitted one FOIA request to ATF in this case on March 26, 2013, seeking "any and all documents, records and information associated with" his name or identification number, and "specifically seek[ing] documents and information in [ATF's] files on the government's paid informant Bryant Troupe, and his working relation with ATF Agent James Green." App. "Count 2" to Compl. at ECF 79. ATF responded that it would not process the portion of plaintiff's request that sought information about third parties pursuant to the Privacy Act, Ex. B to Boucher Decl. at 1, and that it would take no further action on plaintiff's request because the records he sought had "already been subject to the full process contemplated by the FOIA (i.e. initial processing, agency

appeal and judicial review[)].")." Ex. D to Boucher Decl. at 1.  In addition, ATF determined that the records referred to it by EOUSA had also already been subject to processing in the past.  Boucher Decl. ¶ 9.  In a declaration submitted by Stephanie M. Boucher, Chief of the Disclosure Division at ATF, the agency notes that "Boyd has been the requester in twelve FOIA requests to ATF" since 1999, *id.* ¶ 10, and that the agency was involved in FOIA litigation with Boyd from October 15, 1999 until September 24, 2004.  *Id.* ¶ 12.  Boucher avers that "ATF addressed every document responsive to Mr. Boyd's FOIA request" during the litigation of that case.  *Id.*

Plaintiff challenges ATF's refusal to process his request on the grounds that "post-judgment events has [sic] given rise to new claims, because new facts have unfolded that where [sic] not in existence during the original action and could not have been litigated in the prior actions."[23]  Pl.'s Mot. at 24.  Plaintiff points to the following purported evidence of new facts:

- A response motion submitted by the government in a February 8, 2012 criminal proceeding, "where the government had promised to turn over the April 15, 1998 discovery disclosure letters to Counsel Paul Sims, but had failed to do so," Pl.'s Mot at 24–25; *see also* App. A(K) to Pl.'s Mot. at ECF 133–55;

- A 2011 affidavit from Carl Epstein "attesting to the fact that the government had not provided him with various discovery documents as it had claimed before the court, like the April 15, 1998 discovery letters," Pl.'s Mot. at 25; *see also* Statement of Carl L. Epstein (Dec. 27, 2011), App. B to Pl.'s Mot. at ECF 6–8;

- A redacted memorandum dated November 13, 2000 with the subject line "Request to locate Cooperating Individual," which plaintiff contends "show[s] that the government has been deceptive about how it utilized Bryant Troupe in a covert operation," Pl.'s Mot. at 25; *see also* App. B to Pl.'s Mot. at ECF 35–36;

- A November 17, 2000 letter addressed to Bryant Troupe indicating that Troupe had won a sweepstakes prize, Pl.'s Mot. at 25; *see also* App. B to Pl.'s Mot. at ECF 45; and

- The two April 15, 1998 discovery letters, which plaintiff contends "reveal dates of documents in the files of [ATF], September 27, 1997, October 2, 1997, and October 9,

---

23    Plaintiff also asserts that ATF has wrongfully "relied on res judicata or claim perclusion [sic] for its justification for not reviewing and processing" his request.  Pl.'s Mot. at 23.  But defendants have not relied on either doctrine in this case.  *See* Defs.' Reply at 5.

> 1997, that correlate with payments to Bryant Troupe, how Bryant Troupe was used by the government to make a controlled monitored tape conversation to Sharron Troupe, after Sharron had testified before the Grand Jury, and how the courts had been deceived when [ATF] had relied on an implied assurance of confidentiality, to hide its covert activity with Bryant Troupe in plaintiff's criminal case."  Pl.'s Mot. at 26–27.

In addition, plaintiff asserts all of the arguments with respect to the affidavit of Paul Sims that the Court has already addressed in the discussion of EOUSA's withholding of information about Troupe.  *See* Pl.'s Mot. at 29–30.

Plaintiff's arguments are unavailing.  First, the Court has already determined that the claims with respect to Paul Sims, Carl Epstein, and the April 15, 1998 discovery letters do not constitute new evidence that would support an inference of possible government misconduct, and so they also do not require ATF to process records that it has already processed with respect to plaintiff's previous requests.  Furthermore, plaintiff's contention that dates revealed in the April 1998 letters correlate with the dates of records previously withheld by ATF, even if true, does not raise an inference of government wrongdoing.

In addition, the redacted November 13, 2000 memorandum with the subject line "Request to locate Cooperating Individual" simply indicates that there was "a cooperating individual relative to the investigation of Willie E. Boyd," and that, on October 31, 2000, a U.S. District Court judge instructed ATF "to initiate efforts to locate the subject and arrange for the judge to speak with the individual on the telephone."  App. B(C) to Pl.'s Mot. at ECF 35.  Plaintiff believes that the "cooperating individual" was Bryant Troupe, but even if that is true – which the letter does not confirm – nothing about this letter "show[s] that the government ha[s] been deceptive about how it utilized Bryant Troupe in a covert operation."  *See* Pl.'s Mot. at 25.

Finally, plaintiff has not offered, and the Court cannot discern, any explanation as to why a November 17, 2000 letter informing Bryant Troupe that he was eligible for a sweepstakes prize would constitute new and material evidence of government wrongdoing.

Therefore, in light of ATF's unrebutted assertion that it had already processed all of the records responsive to plaintiff's FOIA request in connection with plaintiff's previous dozen requests and a five-year-long lawsuit, *see* Boucher Decl. ¶¶ 10, 12, the Court finds that ATF's response to plaintiff's latest FOIA request was justified.

### III.   The Responses of Treasury, the IRS, the U.S. Marshals Service, and the Bureau of Prisons to Plaintiff's FOIA Request

In the course of its search for records responsive to plaintiff's request, EOUSA unearthed documents that originated from other components of the government, and it referred the documents to those components for further processing.   1st Luczynski Decl. ¶ 8.   Specifically, EOUSA referred 55 pages of records to Treasury, Decl. of Ryan Law [Dkt. # 20-9] ("Law Decl.") ¶ 5; 29 pages to the USMS, Decl. of William E. Bordley [Dkt. # 20-11] ("Bordley Decl.") ¶ 2; and five pages to the BOP, Letter from Johnna M. Todd, for Wanda M. Hunt, Chief, FOIA/PA Section, Federal Bureau of Prisons, to Willie E. Boyd, plaintiff (Feb. 27, 2014) [Dkt. # 20-12] ("BOP Letter") at 1.   Treasury, in turn, referred two of the 55 pages to the IRS.   Law Decl. ¶ 8; *see also* Decl. of Denise Higley [Dkt. # 20-10] ("Higley Decl.") ¶ 2.

Treasury, the IRS, and the USMS released portions of the referred pages to plaintiff, and the BOP released all of the pages referred to it in full.[24]   *See* BOP Letter at 1.   Plaintiff has not specifically challenged any of the referrals or withholdings in his lengthy pleadings, but because he is proceeding *pro se*, and because a district court's review in a FOIA case is *de novo*, the Court

---

24      Because BOP released the records in full, the Court need not address its response.

will examine the agencies' responses in any event. *See Cheeks*, 722 F. Supp. 2d at 107, quoting *Haines*, 404 U.S. at 520–21; 5 U.S.C. § 552(a)(4)(B). The Court finds that Treasury has failed to provide a sufficiently detailed justification for its withholdings under FOIA, but that the withholdings by the IRS and the USMS are justified.

### A.   Treasury's reliance on Exemptions 3, 6, 7(C), and 7(E) is not justified.

EOUSA referred 55 pages to Treasury, and Treasury referred two of those pages to the IRS. Law Decl. ¶¶ 5, 8. In a declaration submitted by Ryan Law, Director of FOIA and Transparency within the Office of Privacy, Transparency, and Records, *id.* ¶ 1, Treasury explains that 52 of the remaining pages originated from the Financial Crimes Enforcement Network office ("FinCEN"), and that one came from the Bureau of the Fiscal Service ("FS"). *Id.* ¶ 10. Law states that FinCEN and FS records fall under the Privacy Act and are exempt from its disclosure provisions. *Id.* ¶¶ 10–14. Thus, Treasury processed the 53 pages of records under FOIA. *Id.* ¶ 14; *see Martin*, 819 F.2d at 1184. Treasury released to plaintiff 15 pages in full and 38 pages in part, citing FOIA Exemptions 3, 6, 7(C), and 7(E), and Privacy Act Exemptions (j)(2) and (k)(2). Law Decl. ¶¶ 9, 13, 15.

As the Court will explain more fully below, the Court cannot determine whether any of Treasury's withholdings were justified because Treasury has not provided a "'relatively detailed justification'" for the applicability of the FOIA exemptions it claims. *See Morley*, 508 F.3d at 1122, quoting *King*, 830 F.2d at 219; *see also Gallant*, 26 F.3d at 172–73. The Court will therefore remand this matter to defendants so that they may coordinate with Treasury to provide a more detailed justification and to release any reasonably segregable portions of the records.

First, Treasury invoked FOIA Exemption 3, which permits the withholding of information that is "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), in conjunction

with the Bank Secrecy Act, 31 U.S.C. § 5311, *et seq*. Law Decl. ¶¶ 16–17. Section 5319 of the Bank Secrecy Act exempts records collected under that act from disclosure under FOIA. 31 U.S.C. § 5319; *see also Ortiz v. U.S. Dep't of Justice*, No. 12-1674 (TFH), 2014 WL 4449686, at *4 (D.D.C. Sept. 9, 2014) (collecting cases). Treasury states that it applied Exemption 3 in conjunction with the Bank Secrecy Act to withhold "references to information collected pursuant to the Bank Secrecy Act." Law Decl. ¶ 17. Treasury's description of this withholding is not sufficient: the agency has failed to provide even a general description of the relevant records or the type of information withheld, let alone the "'relatively detailed justification'" required by law. *See Morley*, 508 F.3d at 1122, quoting *King*, 830 F.2d at 219.

Treasury also withheld the personally identifiable information of third parties under FOIA Exemption 6, which shields from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see also* Law Decl. ¶ 18. Treasury asserts that the information withheld was located in "files similar to personnel and medical files," Law Decl. ¶ 18, but it has provided no description of the records that would permit the Court to assess this legal conclusion. Treasury further states that the withheld information consists of personally identifiable information about third parties, including their names, *id.* ¶ 19, and that "[e]very effort has been made to release all reasonably segregable information contained in these records." *Id.* ¶ 21. But even though it may turn out that the third-party information was properly withheld, the Court cannot determine whether the agency has satisfied FOIA's segregability requirement without a more detailed description of these records. *See Johnson*, 310 F.3d at 776.

Furthermore, Treasury invoked FOIA Exemption 7(C), Law Decl. ¶ 22, which protects information that was (1) compiled for law enforcement purposes, if (2) the disclosure "could

reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).   Treasury states that the information it redacted under this exemption "identifies agency employees and third parties in law enforcement records," Law Decl.  ¶ 23, and that "[t]he types of information that were withheld pursuant to this exemption consist of third party personally identifiable information including names, birthdays, and Social Security numbers."  *Id.* ¶ 24.  But Treasury has, again, entirely failed to describe this set of records, beyond the conclusory statement that they were "law enforcement records."   Thus, the Court cannot determine whether these withholdings were justified or whether the agency released all reasonably segregable non-exempt portions of the records to plaintiff.

Finally, Treasury relied on FOIA Exemption 7(E), which protects law enforcement records from disclosure "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  This exemption "sets a relatively low bar for the agency to justify withholding:  '[r]ather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'"  *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011), quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (alteration in original).

Treasury states that it has invoked Exemption 7(E) "to protect from disclosure databases used in enforcement investigations."  Law Decl. ¶ 29.  It is not apparent, however, how "databases" constitute responsive records under FOIA, as opposed to the systems through which a search for responsive records might be conducted.  Thus, Treasury has again failed to meet its obligation to

provide "'a relatively detailed justification'" for its withholding.  *See Morley*, 508 F.3d at 1122,

quoting *King*, 830 F.2d at 219.

### B.  The IRS's Reliance on Exemptions 6 and 7(C) is justified.

The IRS received a referral of two pages from Treasury.  Law Decl. ¶ 8; *see also* Higley

Decl. ¶ 2.  In a declaration by Denise Higley, a Tax Law Specialist in the HQ Disclosure Office,

Higley Decl. ¶ 1, the IRS explains that "[t]hese two documents consist of:  (1) a January 14, 1998,

letter from the Chief of the IRS Criminal Investigation Division for the Kansas-Missouri District

to the United States Attorney in St. Louis . . . ; and, (2) a February 9, 1999, letter from the same

CI office to the Secretary of the Treasury, Bureau of the Public Debt."  *Id.* ¶ 3.  The IRS released

the first record in full, and all but two lines of the second record, citing FOIA Exemptions 6 and

7(C) to justify the redactions.  *Id.* ¶¶ 3–4.  Higley states that these redactions "protect the names,

addresses, and social security numbers of two other individuals that the IRS Criminal Investigation

was investigating at the same time as plaintiff/requester," in recognition of "the interest of

individuals, whether they be suspects, witnesses, or investigators, in not being associated

unwarrantedly with alleged criminal activity."  *Id.* ¶ 4.  Higley contends that the release of this

information would likely constitute an unwarranted invasion of personal privacy.  *Id.*

The Court finds that the IRS's reliance on Exemption 7(C) is justified, and so it need not

consider whether Exemption 6 also applies.  *See Reporters Comm.*, 489 U.S. at 756.  First, the

redacted record – a letter from the Criminal Investigation office – appears to be a record compiled

for a law enforcement purpose.  *See* 5 U.S.C. § 552(b)(7)(C).  And, second, the IRS has identified

a strong privacy interest in not being associated with alleged criminal activity.  The Court also

notes that, "[a]s a general rule, third-party identifying information contained in [law enforcement]

records is 'categorically exempt' from disclosure." *Lazaridis*, 934 F. Supp. 2d at 38.  Thus, in the

absence of any objection by plaintiff, the Court finds that the IRS's withholdings are justified.

### C.   The U.S. Marshals Service's reliance on Exemption 7(C) is justified.

The USMS received a referral of 29 pages of records from EOUSA.  Bordley Decl. ¶ 2.

According to the declaration of William E. Bordley, Associate General Counsel and Freedom of

Information/Privacy Officer of the USMS, a USMS FOIA specialist determined that 25 of the 29

pages had already been disclosed to plaintiff in connection with previous FOIA requests to USMS

or referrals from other agencies.  *Id.* ¶¶ 1, 3.  Bordley describes these 25 pages as consisting of:

> a three page USM form 312, Personal History Report, dated February 2,
> 1997; a four page USMS Prisoner Tracking System Prisoner Intake Form
> dated October I, 1994; a two page USM Form 102, Seized Property and
> Evidence Control report, dated February 1, 1997 (and a duplicate of the
> same); a two page USM Form 129, Individual Custody and Detention
> Report, dated February 3, 1997; a three page USM Form 11, Report of
> Investigation, dated February 5, 1997 (and a duplicate of the same); a one
> page USM Form 11, Report of Investigation, dated May 9, 1996; a one page
> form USM-11, May 8, 1996; a one page form USM-11, dated March 28,
> 1996; a form captioned Consent to Mail Prisoner Property/Cash, dated
> February 3, 1997 (and a duplicate of the same); and a one page Request for
> Tracing Firearms (undated).

*Id.* ¶ 5.  According to USMS records, all of these pages were previously released to plaintiff and

were the subject of prior litigation before other courts in this District.  *Id.* ¶ 6, citing *Boyd v. U.S.*

*Marshals Serv.*, No. 99-2712 (JR), 2004 WL 5643669 (D.D.C. Sept. 22, 2005), and *Boyd*, 2005

WL 555412.

The USMS FOIA specialist processed the four pages and released them to plaintiff with

redactions under FOIA Exemption 7(C).  Bordley Decl. ¶ 3.  Bordley explains that the four pages

are "records routinely compiled in the course of a criminal investigation and in the custody of

USMS prisoners," *id.* ¶ 7, namely:  "a St. Louis Metropolitan Department Evidence Receipt, a two

page fingerprint card, and a [BOP] memorandum."  *Id.* ¶ 9.  USMS redacted the names and initials

of a Deputy U.S. Marshal and a "state/local law enforcement officer" from page one, the names and initials of law enforcement personnel from pages two and three, and the names and a telephone number of BOP personnel and a law enforcement agent from page four. *Id.* Bordley contends that there is no public interest in the disclosure of information about law enforcement personnel with whom plaintiff may have had contact while in USMS custody, and that the release of this information "could subject these individuals to unwarranted public attention, harassment, and annoyance . . . and could possibly pose a danger to their life or physical safety." *Id.* ¶ 7. Finally, Bordley states that because the agency made only "minimal deletions" to the four pages, all reasonably segregable non-exempt portions of the records have been released. *Id.* ¶ 10.

In light of the thoroughly detailed affidavit provided by the USMS, the significant privacy interests at stake, and plaintiff's failure to object, the Court finds that the USMS's reliance on Exemption 7(C) is justified.

## CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part defendants' motion for summary judgment, and it will grant in part and deny in part plaintiff's motion for summary judgment.[25]  The Court finds that all of the withholdings by ATF, the IRS, and the U.S. Marshals Service have been justified.  The Court further finds that EOUSA's reliance on FOIA Exemption 7(C) and the Privacy Act is justified, but that EOUSA has not justified all of its withholdings under FOIA Exemptions 3 and 5 on this record.  Finally, the Court finds that Treasury has not justified any of its withholdings on this record.  Therefore, the case is remanded to defendants for further action consistent with this opinion.  A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  March 31, 2015

---

25     Plaintiff contends throughout his pleadings that defendants have acted in bad faith, and requests that he be permitted to take discovery for that reason.  *See* Pl.'s Mot. at 53–54.  As the Court's analysis has shown, plaintiff has failed to establish any bad faith on the part of defendants.  Therefore, plaintiff's request to take discovery is denied.  In addition, in light of this Memorandum Opinion, plaintiff's motion to expedite the proceedings in this case, Pl.'s Mot. to Expedite [Dkt. # 34], will be denied as moot.