# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
WILLIE E. BOYD,                                )
                                               )
                    Plaintiff,                 )
                                               )
          v.                                   )        Civil Action No. 13-1304 (ABJ)
                                               )
EXECUTIVE OFFICE FOR                           )
UNITED STATES ATTORNEYS, *et al.*,             )
                                               )
                    Defendants.                )
_____)

## MEMORANDUM OPINION

Plaintiff Willie E. Boyd brought this *pro se* action against defendants the Executive Office

for United States Attorney ("EOUSA") and the Bureau of Alcohol, Tobacco & Firearms ("ATF")

under the Freedom of Information Act ("FOIA").  Compl. [Dkt. # 1].  On March 31, 2015, the

Court remanded part of the case so that EOUSA could determine whether four specific documents

had been properly withheld.  *See Boyd v. EOUSA*, 87 F. Supp. 3d 58, 84–86 (D.D.C. 2015).  The

Court also required EOUSA to file copies of four documents – numbers 1, 3, 6, and 8 on

defendant's *Vaughn* Index – with the Court in camera so that the Court could assess the basis for

their withholdings.  Min. Order (Aug. 28, 2015); *see also* Ex. F to Suppl. Decl. of David Luczynski

[Dkt. # 20-6] ("*Vaughn* Index").  The Court is now in a position to resolve the few remaining

issues in the case.

Defendants have filed a "Second Renewed Motion for Summary Judgment."  Defs.'

Second Renewed Mot. for Summ. J. [Dkt. # 50] ("Defs.' Mot."); Mem. in Supp. of Defs.' Mot.

[Dkt. # 50-1] ("Defs.' Mem."); *see also* Pl.'s Resp. to Mem. of Law in Supp. of Defs. Mot. [Dkt.

# 55] ("Pl.'s 2d Opp.").  The pending motion for summary judgment relates solely to the

documents from the Treasury Department that the agency claims were properly withheld.  Plaintiff

has since represented to the Court that he "seeks not to pursue a challenge to those documents of

the FOIA exemptions by Treasury, and waive[s] all rights to the information being withheld."  Pl.'s

2d Opp. at 1.  Therefore, because plaintiff has conceded defendants' motion, the Court will grant

it.

    With respect to the four remaining EOUSA records, plaintiff opposed their withholding in

his opposition to defendants' earlier motion for summary judgment and cross-motion for summary

judgment, Pl.'s Opp. Mot. to Defs.' Renewed Mot. for Summ. J. & Cross-Mot. for Summ. J. [Dkt.

# 28], but he has not further challenged EOUSA's withholding of the documents in the wake of

the Court's March 31 Order.

    For the reasons that follow, the Court will grant judgment in favor of defendants in part

and deny it in part.  The Court finds that defendants properly withheld documents 1 and 3, but that

a specific sentence in documents 6 and 8 should be released.  Defendants shall, by January 4, 2016,

file a notice with the Court that they have released the records to plaintiff.

## BACKGROUND

    Plaintiff is a federal prisoner confined at the Federal Correctional Institute in Greenville,

Illinois.  *See* Compl. at 1.  He was convicted of multiple criminal offenses after a bench trial in the

Eastern District of Missouri in 1998.  *United States v. Boyd*, 180 F.3d 967, 974–75 (8th Cir. 1999).

The conviction was affirmed on appeal.  *Id.* at 983.

    Since 1998, plaintiff has filed numerous *pro se* FOIA actions in this District against the

defendants in this case and other government agencies.  *See, e.g.*, *Boyd v. EOUSA*, 741 F. Supp.

2d 150 (D.D.C. 2010) (FOIA lawsuit against EOUSA); *Boyd v. ATF*, 496 F. Supp. 2d 167 (D.D.C.

2007) (FOIA lawsuit against ATF); *Boyd v. Criminal Div., U.S. Dep't of Justice*, No. 04-cv-1100

(ESH), 2005 WL 555412 (D.D.C. March 9, 2005) (FOIA lawsuit against the Criminal Division of

the U.S. Department of Justice, the U.S. Probation Office for the Eastern District of Missouri, the

U.S. Parole Commission, the U.S. Marshals Service, and EOUSA), *aff'd*, 475 F.3d 381, 384–85,

392 (D.C. Cir. 2007) (describing plaintiff's history of FOIA litigation).

   On March 26, 2013, plaintiff submitted a FOIA request to EOUSA that sought "any and

all documents, records, and information in [his] criminal case *United States v. Willie E. Boyd*,

4:97CR301, in the Eastern District of Missouri."  App. "Count I" to Compl. [Dkt. # 1] at ECF 8

("FOIA Req.").[1]  Plaintiff's request explained that he sought "information from the criminal case

file that would expose the bad-faith nondisclosure of Brady/Giglio/Jencks and Rule 16 materials

and information of governmental misconduct with the didcovery [sic] materials in the case."  *Id.*

On February 27, 2014, EOUSA disclosed to plaintiff 201 pages of responsive records in

full and 267 pages with redactions.  *Boyd*, 87 F. Supp. 3d at 66.  The agency informed plaintiff

that it was withholding 139 responsive pages under FOIA Exemptions 3, 5, 6, and 7(C).  *Id.*  It

also notified plaintiff that it had referred an unspecified number of records to the components of

the government from which they originated – namely ATF, the Internal Revenue Service, the

Department of the Treasury ("Treasury"), the Bureau of Prisons, and the U.S. Marshals Service –

for further processing.  *Id.*  Plaintiff ultimately sent FOIA requests to those agencies, and the

---

1    Plaintiff attached 157 pages of material to the six-page complaint.  *See* Compl. This additional material is organized into two large appendices, "Count 1" and "Count 2," with multiple sub-appendices nested within each.  As it did in its March 31, 2015 opinion, the Court will cite to these materials accordingly, and will refer to the page numbers generated by ECF for additional clarity.

responses to those requests were also a part of this litigation, but because they are not relevant to this Memorandum Opinion, the Court will not address them further.

Plaintiff filed this action on August 28, 2013.  Compl.  The Court granted plaintiff leave to amend his complaint on March 5, 2014.  Min. Order (Mar. 5, 2014); *see also* Am. Compl. [Dkt. # 15].

On March 18, 2014, defendants moved for summary judgment, Defs.' Mot. for Summ. J. [Dkt. # 17], but because the motion did not address Count 3 of plaintiff's amended complaint, the Court afforded defendants an opportunity to file a renewed motion.  Min. Order (Apr. 22, 2014). Defendants filed the renewed motion on June 23, 2014.  Defs.' Renewed Mot. for Summ. J. [Dkt. # 20].  On October 27, 2014, plaintiff filed a combined memorandum in opposition to defendants' renewed motion for summary judgment and cross-motion for summary judgment.  Pl.'s Opp Mot. to Defs.' Mot. for Summ. J. & Pl.'s Cross-Mot. for Summ. J. [Dkt. # 28] ("Pl.'s 1st Opp.").

On March 31, 2015, the Court ruled on the cross-motions.  *Boyd*, 87 F. Supp. 3d 58.  The Court granted defendants' motion almost in its entirety, but remanded so that Treasury could provide further explanations for its withholdings, and so that EOUSA could provide further explanations for four of its withholdings.  *See id.* at 82–86, 89–91.  The Court subsequently ordered defendants to file the four challenged documents in camera.  Min. Order (Aug. 28, 2015).

Most recently, defendants moved for summary judgment on the Treasury documents. Defs.' Mot.  Plaintiff responded to defendants' motion and represented that he "seeks not to pursue a challenge to those documents of the FOIA exemptions by Treasury, and waive[s] all rights to the information being withheld."  Pl.'s 2d Opp. at 1.

4

On November 3, 2015, the Court ordered defendant EOUSA to file a supplemental memorandum explaining why it claimed that the work-product privilege justified withholding one of the four challenged documents.  Min. Order (Nov. 3, 2015).  EOUSA responded to the Court's Order, and explained that it was no longer relying on the work-product privilege as a justification for the withholding of document 1, but that it continued to rely on the Privacy Act and on Exemptions (6) and (7)(C).  2d Suppl. Decl. of David Luczynski [Dkt. # 58-1] ¶ 4 ("2d Supp. Luczynski Decl.").[2]

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's action *de novo* and "the burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  "FOIA cases are typically and appropriately decided on motions for summary judgment."  *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).  On a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence."  *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  But where a plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations."  *Moore*, 601 F. Supp. 2d at 12.

---

2       Defendant EOUSA originally filed a response to the Court's Order on November 13, 2015. *See* Defs.' Submission of Suppl. Decl. [Dkt. # 57].  However, on November 16, 2015, defendant filed an amended version of its response.  Defs.' Am. Submission of Suppl. Decl. [Dkt. # 58].  For purposes of this opinion, the Court considers only the amended response.

While the same legal framework applies in every case, where a plaintiff proceeds *pro se*, "the Court must take particular care to construe the plaintiff's filings liberally, for such complaints are held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Cheeks v. Fort Myer Constr. Co.*, 722 F. Supp. 2d 93, 107 (D.D.C. 2010), quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## ANALYSIS

FOIA requires the release of government records upon request.  Its purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential"), citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). The Supreme Court has instructed that "FOIA exemptions are to be narrowly construed." *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must first demonstrate that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68

6

(D.C. Cir. 1990).[3]  Second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005), citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  "[W]hen an agency seeks to withhold information, it must provide a relatively detailed justification" for the withholding, *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007), quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987), through a *Vaughn* Index, an affidavit, or by other means.  *Gallant v. NLRB*, 26 F.3d 168, 172–73 (D.C. Cir. 1994).

After asserting and explaining its exemptions, an agency must release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record.  *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *see also Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002).  "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," although "the agency is not required to provide so much detail that the exempt material would effectively be disclosed."  *Johnson*, 310 F.3d at 776, quoting *Mead Data*, 566 F.2d at 261.  "[A] district court has the obligation to consider the segregability issue *sua sponte*, regardless of whether it has been raised by the parties."  *Id.*, citing *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

---

3        Based on the limited nature of the remand in this action, and because the Court has already determined that EOUSA's search was adequate, *see Boyd*, 87 F. Supp. 3d at 70–72, the Court will not consider the adequacy issue further.

Because a court must determine *de novo* whether an agency properly withheld information, a court may examine the withheld records *in camera*. 5 U.S.C. § 552(a)(4)(B); *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987) ("[W]hen the requested documents 'are few in number and of short length,' *in camera* review may save time and money."), quoting *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980). The Court, in an exercise of its discretion, ordered that the four challenged documents at issue in this case be delivered to chambers *in camera*, see Min. Order (Aug. 28, 2015), and it has had the benefit of reviewing the material that plaintiff claims was improperly withheld.

EOUSA claims that FOIA exemptions 3, 5, 6, and 7C[4], and Privacy Act exemption (j)(2)[5] protect the documents from disclosure. *Vaughn* Index at 1–2, 4–6. Specifically, EOUSA contends

---

4       Exemption 7(C) protects information that was (1) compiled for law enforcement purposes, if (2) the disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Court has already found that the documents at issue here can be redacted in part under that Exemption. *Boyd*, 87 F. Supp. 3d at 82. And, as the Court explained in its previous opinion, because Exemption 6 requires a higher threshold than Exemption 7, and because the Court found the Exemption 7 withholdings are well-founded, it will not consider Exemption 6 further in this opinion. *Id.* at 72, 74 n.6. However, because the Court has not yet considered the extent to which Exemption 7(C) allows the withholding of document 1 in its entirety, it will analyze that exemption in this opinion only as to that document.

5       The Privacy Act provides that "[e]ach agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him . . . ." 5 U.S.C. § 552a(d)(1). Exemption (j)(2) applies, in relevant part, to records that are: (1) stored in a system of records that has been designated by an agency to be exempt from the Privacy Act's disclosure requirements; and (2) stored in a system that is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws," and that consists of "information compiled for the purpose of a criminal investigation." *Id.* § 552a(j)(2)(B). The Court previously concluded that "EOUSA properly determined that Privacy Act Exemption (j)(2) applies to the records sought by plaintiff in this case." *Boyd*, 87 F. Supp. 3d at 87. The Court's remand was thus limited to the propriety of defendant's withholdings under FOIA.

that document 1 is protected by Exemptions 6, and 7(C), document 3 is protected by Exemption 3, document 6 is protected by Exemption 5, and document 8 is protected by Exemptions 3 and 5. The Court will consider each document in turn.

## I.      Document 1

EOUSA originally claimed that Document 1 was exempt from disclosure under Exemption 5, because it reflected attorney work product. *See Vaughn* Index at 1.  The Court's March 31, 2015 opinion, in denying defendants' motion for summary judgment, explained its confusion with defendants' assertion of this privilege:

> First, EOUSA has not explained how copies of interviews of third parties constitute inter-agency or intra-agency memorandums or letters.  Second, EOUSA has not explained why such a record would reflect the mental processes of the attorney.  And, third, EOUSA has not stated that this record preceded any particular decision, or explained how it reflects the give-and-take of the consultative process.

*Boyd*, 87 F. Supp. 3d at 84–85 (internal quotation marks and citations omitted).  On August 28, 2015, the Court ordered that the document be delivered to chambers for *in camera* review, *see* Min. Order (Aug. 28, 2015), and on November 3, 2015, the Court issued a Minute Order requiring defendant EOUSA to explain, in light of the Court's opinion, why document 1 should be protected under Exemption 5.  Min. Order (Nov. 3, 2015).  EOUSA withdrew its justification on the basis of the attorney work-product and deliberative process privileges, but pressed its argument that Exemptions 6 and 7(C) protected the record in full.  2d Suppl. Luczynski Decl. ¶ 4.[6]

---

6      The Court is somewhat frustrated that the defendants would waste so much of its time and effort advancing a theory for withholding records that was plainly unjustified.

In order for particular records to qualify for Exemption 7(C), the agency must first demonstrate that the documents were compiled for law enforcement purposes. *See Rural Hous. Alliance v. U.S. Dep't of Agric.*, 498 F.2d 73, 80 (D.C. Cir. 1974). Defendant EOUSA states that document 1 – a collection of interview memos – was compiled for law enforcement purposes because it was created as part of the government's investigation and criminal prosecution of plaintiff. 2d Suppl. Luczynski Decl. ¶ 6. Based on the Court's *in camera* review, it is clear that the documents were compiled for this purpose because they relate to the criminal investigation and prosecution.

In this Circuit, where a FOIA request for law enforcement records invokes the privacy interests of any third party mentioned in those records (including investigators, suspects, witnesses, and informants), the exemption applies unless there is an overriding public interest in disclosure. *See Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003). So the Court must determine whether any privacy interest exists, and, if it does, balance the privacy interest against the public interest in disclosure.

### A.   There is a privacy interest in the withheld information.

The Court's review of document 1 *in camera* confirms defendants' statements in their *Vaughn* index that document 1 consists of interview reports and memoranda that document the conversations with various third-party individuals that took place during the investigation and prosecution of plaintiff. *See Vaughn* Index at 1; 2d Suppl. Luczynski Decl. ¶¶ 11–12.

Individuals who are involved in law-enforcement investigations, such as targets, witnesses, complainants, and investigators, have a privacy interest in the non-disclosure of their identities. *Comput. Prof'ls for Social Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996).

10

That privacy interest belongs to the individual, not to the agency.  *See Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989).  The D.C. Circuit has held that "unless access to the names and addresses of private individuals appearing in files within the ambit of Exception 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."  *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

Courts in this district agree that Exemption 7(C) protects not only those individuals' names or other discrete personally-identifiable information, but also, more generally, "records and information that would reveal [the individual's] identity."  *Nat'l Whistleblower Center v. Dep't of Health & Human Servs.*, 849 F. Supp. 2d 13, 29–30 (D.D.C. 2012); *see also* 5 U.S.C. § 552(b)(7)(C).  Mere redactions of a person's name is not always sufficient to protect a person's identity.  As the Supreme Court has explained in a case about records of honors and ethics hearings at the Air Force Academy:  "what constitutes identifying information regarding a subject cadet must be weighed not only from the viewpoint of the public, but also from the vantage of those who would have been familiar, as fellow cadets or Academy staff, with other aspects of his career at the Academy."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 380 (1976).[7]

So, where a person's identity might be revealed based on the content of the document, courts have permitted agencies to withhold the records in their entirety under Exemption 7(C).  As the U.S. Court of Appeals for the Tenth Circuit has explained, where "the requested documents

---

7       The Supreme Court's opinion in *Rose* was discussing Exemption 6.  425 U.S. at 380.  As the Court has explained, Exemption 7(C) is somewhat broader than Exemption 6.  *Boyd*, 87 F. Supp. 3d at 72, 74.  Therefore, since the Supreme Court based its comments on Exemption 6, those comments seem to apply with equal force to Exemption 7(C).

relate[d] to a few incidents involving about a dozen people," the agency could properly withhold

the documents, because "[e]ven sanitized, these documents would enable [the plaintiff] and others

who had specific knowledge of these incidents, to identify readily the informant and persons

discussed in each document." *Alirez v. NLRB*, 676 F.2d 423, 427–48 (10th Cir. 1982). In *Alirez*,

the defendant had collected "informant statements" during the course an investigation into alleged

unfair labor practices. *Id.* at 425. The documents

> reveal[ed] threats of physical violence and retaliation at work against fellow
> employees involved in [the plaintiff's] dispute with his employer,
> allegations of assaultive conduct on the part of [the plaintiff], explicit
> charges of sexual deviancy on the part of another individual, and, in one
> instance, statements of an employee about his attitude towards unionization.

*Id.* Because the FOIA plaintiff could readily identify the parties, even with the names redacted,

the court held that "[t]he deletion of names and other identifying data ordered by the district court

[was] inadequate to prevent serious privacy invasions." *Id.* at 427.

In criminal cases such as this one, the privacy interest does not substantially dissipate after

the defendant's trial, because even after a prosecution has concluded, a person who cooperated

with the government's investigation retains a privacy interest in the nondisclosure of his or her

identity. As the D.C. Circuit has explained, "the mention of an individual's name in a law

enforcement file will engender comment and speculation and carries a stigmatizing connotation."

*See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1174 (D.C. Cir. 2011) (finding that passage of

more than a "quarter century" does not diminish the potential for embarrassment and reputational

harm that comes with being associated with a criminal investigation), quoting *Schrecker*, 349 F.3d

at 666 (holding that passage of more than fifty years does not diminish privacy interest); *see also*

*McDonnell v. United States*, 4 F.3d 1227, 1256 (3d Cir. 1993) ("[W]hile the privacy interest of

12

those involved in a criminal investigation may become diluted by the passage of time . . . the potential for embarrassment and harassment may endure for many years."), quoting *Landano v. U.S. Dep't of Justice*, 956 F.2d 422, 427 (3d Cir. 1992); *Diamond v. FBI*, 707 F.2d 75, 76–77 (2d Cir. 1983) (explaining that "[f]or persons who were subjects of FBI investigations or who cooperated with the agency" during the McCarthy era, "the potential for embarrassment, harassment, or other repercussions remains acute").

Plaintiff was convicted in April 1998, *Boyd*, 180 F.3d at 975, so less time has elapsed here than the more than 25 years in *Roth* and the more than 50 years in *Schrecker*. The privacy interests are especially acute in this case because, based on the Court's *in camera* review of the records, there is a fair possibility that plaintiff would be able to identify the parties based on other information in the documents, even if their names were redacted. *See Vaughn* Index at 1; *Rose*, 425 U.S. at 380. The witnesses have a right to have their identities protected from disclosure. *See Roth*, 642 F.3d at 1174.

>    **B.    There is no overriding public interest in disclosure, and none of the
>    information is segregable.**

Plaintiff has argued that the interview memoranda at issue here would "expose the bad-faith nondisclosure of Brady/Giglio/Jencks and Rule 16 materials and information of governmental misconduct with the discovery materials." FOIA Req. at 8. But "disclosure in criminal trials is based on different legal standards than disclosure under FOIA, which turns on whether a document would usually be discoverable in a civil case." *Williams & Connolly v. SEC*, 662 F.3d 1240, 1245 (D.C. Cir. 2011). As the D.C. Circuit has explained, "FOIA is neither a substitute for criminal discovery nor an appropriate means to vindicate discovery abuses." *Id.* (internal citations omitted).

13

Even if plaintiff could show a nexus between these documents and the alleged discovery violations, courts have consistently held that FOIA's limited purpose is to protect the right of the people to be "informed about what their government is up to." *Roth*, 642 F.3d at 1177, quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 479 U.S. 749, 773 (1989).  As the Supreme Court has explained:  "[o]fficial information that sheds light on the agency's performance of its statutory duties falls squarely within that statutory purpose.  That purpose, however, it not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Reporters Comm.*, 479 U.S. at 773.  The interview memoranda at issue in document 1 contain, at most, "little or nothing" about the Department of Justice's investigation into the plaintiff, other than to recount interviews with potential witnesses.  *See id.*  The documents do not even seem to shed light on plaintiff's alleged discovery violations, but even if they did, plaintiff would still not be entitled to them.  *Williams & Connolly*, 662 F.3d at 1245.

The next question is whether there is any portion of document 1 that should be withheld as not reasonably segregable from the names, identifying information, and statements of the witnesses.  5 U.S.C. § 552(b); *Mead Data*, 566 F.2d at 260.  For the reasons that the Court has explained, and based on its *in camera* review, the Court concludes that there is no segregable material in these interview memoranda because the non-exempt portions of document 1 are "inextricably intertwined" with the identifying information about the witnesses.  *Johnson*, 310 F.3d at 776.  The reports rely on the statements of the witnesses, and even if their names were redacted, plaintiff would likely be able to identify those people.  For those reasons, document 1 was properly withheld in full.

14

## II.     Document 3

Defendant EOUSA contends that document 3 is exempt from disclosure under FOIA Exemption 3, which permits an agency to withhold information that is "specifically exempted from disclosure by statute."  5 U.S.C. § 552(b)(3).  EOUSA invokes Exemption 3 in conjunction with a provision of the Ethics in Government Act.  *Vaughn* Index at 2, citing 5 U.S.C. app. 4 § 107(a)(2). The Ethics in Government Act provides that, when a government ethics office requires its employees to file confidential financial disclosure reports, those reports "shall be confidential and shall not be disclosed to the public."  5 U.S.C. app. 4 § 107(a)(2).

The Court has reviewed document 3 *in camera* – the document is, as EOUSA asserts, a "Conflict of Interest Certification."  The Court is satisfied that EOUSA has properly withheld this document under the Ethics in Government Act because the document appears to be the kind of confidential financial disclosure report that is protected by that statute.  *See* 5 U.S.C. app. 4 § 107(a)(2).

## III.     Documents 6 and 8

EOUSA claims that documents 6 and 8 are protected by Exemption 5, and that document 8 is further protected by Exemption 3.  *Vaughn* Index at 4–6.

### A.     Exemption 3 – Federal Rule of Criminal Procedure 6(e)

EOUSA first cites Rule 6(e) of the Federal Rules of Criminal Procedure as a justification to withhold document 8 in full under Exemption 3.  *Vaughn* Index at 4–5.  Rule 6(e) prohibits, with exceptions, the disclosure of "matter[s] occurring before [a] grand jury."  Fed. R. Crim. P. 6(e)(2).  Rule 6(e) qualifies as a "statute" for purposes of Exemption 3 because it was affirmatively enacted by Congress.  *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d

856, 867–68 (D.C. Cir. 1981).   But Rule 6(e) should not be read so literally "as to draw 'a veil of secrecy . . . over all matters occurring in the world that happen to be investigated by a grand jury.'"   *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987), quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980).   "There is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers . . . ."   *Id.*   Rather, "the touchstone is whether disclosure would tend to reveal some secret aspect of the grand jury's investigation," such as "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like."   *Id.* (citations and internal quotation marks omitted).

The first page of document 8 appears to be the first page of an incomplete letter.   However, even that first page discusses "the strategy or direction" of the grand jury's investigation into plaintiff.   *See id.*   For that reason, the first page of document 8 was properly withheld in full.   The other pages of document 8 appear to be letters sent among the prosecution team, or between counsel for the government and counsel for plaintiff.   Those letters were sent well after plaintiff's indictment, and do not reflect any grand jury material protected by Rule 6(e).   Those letters, therefore, should not have been withheld in full.   The Court therefore next considers whether those documents are protected under Exemption 5.

### B.      Exemption 5 – Work-Product Privilege

Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."   5 U.S.C. § 552(b)(5); *see also U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (holding that a record may be withheld under Exemption 5 only if "its

16

source [is] . . . a [g]overnment agency, and it . . . fall[s] within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it"). Exemption 5 "encompass[es] the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including the attorney-client privilege, the attorney work-product privilege, and the executive "deliberative process" privilege. *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981). Here, EOUSA invokes the work-product and deliberative process privileges.

The attorney work-product privilege protects materials that reflect the "mental processes of the attorney," *Klamath*, 532 U.S. at 8, quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975), when the materials were "prepared in anticipation of litigation or for trial." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005), quoting Fed. R. Civ. P. 26(b)(3). An agency can satisfy the "anticipation of litigation" standard by "demonstrating that one of its lawyers prepared a document in the course of an investigation that was undertaken with litigation in mind," even if no specific lawsuit has begun. *SafeCard Servs.*, 926 F.2d at 1202.

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8–9 (internal citations omitted), quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). Thus, the privilege only "protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006), citing *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *accord McKinley v. Bd. of Governors of Fed. Reserve*

*Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011).  "[A] document [is] predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'"  *Judicial Watch*, 449 F.3d at 151, quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

EOUSA contends that one sentence on one page of both documents 6 and 8 – the "P.S." to a letter that is otherwise being disclosed – is exempt from disclosure under Exemption 5.  EOUSA claims that exemption 5 protects the "P.S." line of page 2 of document 8, and an identical redaction of a copy of that letter at page 3 of document 6.  Those identical letters request that someone on the prosecution team take a particular action that relates to a local law enforcement official.  "The information contains the U.S. Attorney's opinion, theory of the case, facts, assessments of facts, impression of the witnesses, the strength of various evidence and problem areas in the case, and issues upon which the attorney could present the case."  *Vaughn* Index at 4, 6.  But the proposed redaction contains none of that protected information – it merely contains a request that the recipients of the letter pass the information it contains to someone else.  And the government has not proposed that the rest of the same letter, which details the government's plans to review specific evidence, is protected under the work-product privilege.

The Court finds that the proposed redacted P.S. line is not protected under the work-product or deliberative process privileges.  The request does not reflect the mental processes of the attorney, as the work-product privilege would require, nor does it reflect internal agency decision-making.  Therefore, the only portion of this sentence that may be withheld is the identity of the local law enforcement officer named at the end of the sentence under Exemption 7(C).  *See Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) (finding "legitimate interest" in

18

preserving the identities of government officials where disclosure could "subject them to annoyance or harassment in either their official or private lives").

As to the other proposed redactions on other pages of documents 6 and 8, and in all other respects, though, the Court agrees with EOUSA that any other redactions of documents 6 and 8 were proper.

### CONCLUSION

In sum, the Court agrees with the government that documents 1 and 3 were properly withheld in full.  As to documents 6 and 8, the Court finds that the P.S. line of the letter described above should not be redacted, except to remove the name of a local government official.

The Court otherwise finds that the redactions and withholdings in those documents are proper.  For the reasons explained above, the government's motion for summary judgment will be granted as conceded, the remaining portions of documents 6 and 8 should be released to the plaintiff by January 4, 2016, and the Court otherwise will enter judgment in favor of defendants.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  November 30, 2015

19